PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3801
_____

ESTATE OF JEFFREY H. WARE, By Barbara Boyer,
individually, on behalf of wrongful death beneficiaries and as
Administratrix of the Estate of Jeffrey H. Ware,
                                                    Appellant

v.

HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA;
UNIVERSITY OF PENNSYLVANIA;
UNIVERSITY OF PENNSYLVANIA PERELMAN
SCHOOL OF MEDICINE;
UNIVERSITY OF PENNSYLVANIA TRUSTEES; ANN R.
KENNEDY, D.S.C.; GARY KAO, M.D.;
MICHELLE ALONSO-BASANTA, M.D.; NATIONAL
SPACE BIOMEDICAL RESEARCH INSTITUTE;
CENTER FOR ACUTE RADIATION RESEARCH

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-14-cv-00014)
District Judge: Honorable Joseph F. Leeson, Jr.

_____

Argued June 28, 2017

Before: AMBRO, RESTREPO, and COWEN, <u>Circuit Judges</u>

(Opinion filed September 18, 2017)

Glenn A. Ellis, Esquire
Aaron J. Freiwald, Esquire          (Argued)
Mathew R. Bravette, Esquire
Layser & Freiwald
1500 Walnut Street, 18th Floor
Philadelphia, PA  19102

     Counsel for Appellant

Donald E. Jose, Esquire      (Argued)
Jose & Associates
108 Tramore Circle
Malvern, PA   19355

Theresa F. Sachs, Esquire   (Argued)
Daniel J. Sherry, Esquire
Donna Modestine, Esquire
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA   19103

     Counsel for Appellees

———————

OPINION OF THE COURT

———————

AMBRO, <u>Circuit Judge</u>

Barbara Boyer, the widow of a cancer researcher who developed a fatal tumor allegedly as a result of inadequate safety precautions taken to protect him from radiation in his lab, sued the University of Pennsylvania together with affiliated persons and entities.[1] Before us is the reach of the Price-Anderson Act, *see* 42 U.S.C. § 2011, *et seq.*, and its remedy-limiting provisions. The Act gives federal courts jurisdiction to resolve a broad set of claims involving liability for physical harm arising from nuclear radiation. Boyer asserts, however, that the Act's unexpressed intent would exempt her husband's injuries from its jurisdictional grant.

Her claims fall within the text of the Act, so if we are to limit it to a zone of interests narrower than its text provides, Boyer must offer a compelling limiting principle that would put her allegations beyond the Act's reach. Although she suggests several implicit limitations, each is

———————

[1] The defendants in this action are the University of Pennsylvania; the Hospital of the University of Pennsylvania; the Perelman School of Medicine; the Trustees of the University of Pennsylvania; and Drs. Ann Kennedy, Gary Kao, and Michelle Alonso-Basanta. We refer to them jointly as the "UPenn defendants"; "UPenn" refers, depending on context, to the University of Pennsylvania or all the defendants.

3

either unconvincing or, even if adopted, would leave this case still within the Act's reach. Thus we must affirm.

## I.     BACKGROUND

Jeffrey H. Ware, Ph.D., was a neuroscientist at the University of Pennsylvania who studied the effects of radiation on biological organisms with the goal of better understanding how radiation affects astronauts while in orbit. In the course of his research Ware used cesium-137 irradiators to track the effects of low-level radiation on mice and rats.

Tragically, Ware suffered in 2010 a rare form of brain cancer called gliosarcoma. Boyer claims gliosarcoma is associated with radiation exposure (however, because she produced no expert reports, there is nothing in the record to support this link). She also alleges that Ware's cancer specifically resulted from radiation exposure that UPenn failed to monitor properly or protect against. Moreover, UPenn failed to inform Ware of the level of radiation to which he was exposed.

Following his diagnosis, Ware turned to the University's affiliated hospital for medical care. He underwent chemotherapy and radiation in order to slow the cancer's progression. Boyer alleges that Ware was not given appropriate information about these treatments; that, given the advanced stage of his disease, they provided little benefit; and that, at one appointment where she was not present, a UPenn doctor enrolled Ware in a research study to investigate the effects of chemotherapy and radiation on brain cancer patients without his knowing consent. According to Boyer, UPenn concealed and withheld documents and data related to the study to "cover up its terrible record of radiation safety and to protect millions of research dollars." Boyer's Br. at 9.

4

UPenn also discouraged Ware from seeking palliative care, she claims, in order to maintain his participation in the study.

Just a year after his diagnosis, Ware died from his cancer at age 47. Boyer filed a complaint in the Pennsylvania Court of Common Pleas as administratrix of Ware's estate as well as on behalf of herself and Ware's surviving children. Her initial complaint alleged numerous counts, including negligence, fraud, retaliation, and negligent infliction of emotional distress. She added to the UPenn defendants the National Space Biomedical Research Institute ("NSBRI"), a research organization started by NASA that funded Ware's work.

UPenn and the NSBRI removed the case to federal court on the grounds that (1) claims against UPenn are covered by the Price-Anderson Act, which provides federal jurisdiction over claims asserting "public liability" arising from a "nuclear incident," *see* 42 U.S.C. §§ 2014(q), (w), (hh), & 2210(n); and (2) 28 U.S.C. § 1442(a) permits removal of claims against NSBRI because it is a federal agency.

Following Boyer's unsuccessful motion to remand, the District Court adopted a Magistrate Judge's Report and Recommendation that the Price-Anderson Act applies to Boyer's claims alleging that Ware was harmed by radiation from cesium-137 used in his lab and that the NSBRI is a federal agency. Boyer responded by dismissing all claims against the NSBRI and amending her complaint to include two counts of "negligence under the Price-Anderson Act" (the "Price-Anderson claims") and additional counts styled as state-law claims for fraud, negligent infliction of emotional distress, malpractice, and "corporate negligence." J.A. 476-488.

5

Discovery began, and UPenn produced five expert reports and thousands of pages of documents. Boyer failed to produce a single expert report to substantiate her claims. UPenn filed four motions that the District Court construed as motions for summary judgment, to which Boyer never responded.

Per regulations issued by the Nuclear Regulatory Commission ("NRC"), entities holding licenses to handle certain nuclear materials must limit the dose of radiation received by employees from occupational exposure to five rem (5,000 millirem) per year. 10 C.F.R. § 20.1201 ("Occupational dose limits for adults"). It is uncontested that Ware's total occupational radiation exposure over 16 years was only 0.075 rem (75 millirem), which would yield an annual average of only 0.0047 rem (4.7 millirem).[2] Because this amount is far below the five-rem standard set in § 20.1201, Boyer concluded that she could not prevail on any claims governed by the Price-Anderson Act, so she moved to withdraw her Price-Anderson claims and to remand the remainder of her claims to state court.

The District Court denied the motion to withdraw, and, because Boyer had failed to produce any expert reports or even oppose UPenn's motions for summary judgment, it granted summary judgment to UPenn on all of her claims. Boyer appeals, challenging the District Court's determination that the Price-Anderson Act applies to her negligence claims as well as the Court's denial of her motion to withdraw while retaining jurisdiction over her remaining state-law claims.

---

[2] Boyer alleges that Ware was not, but should have been, provided with a dosimeter badge at all times to monitor his individual radiation exposure. However, she does not dispute the 0.075 rem total exposure calculation.

## II. STANDARD OF REVIEW

We review *de novo* the District Court's interpretation of the Price-Anderson Act and exercise the same review over whether subject-matter jurisdiction exists. *See Fair Hous. Rights Ctr. in Se. Pennsylvania v. Post Goldtex GP, LLC*, 823 F.3d 209, 213 (3d Cir. 2016); *Weitzner v. Sanofi Pasteur, Inc.*, 819 F.3d 61, 63 (3d Cir. 2016). Our review of the District Court's denial of Boyer's request for voluntary dismissal is for abuse of discretion. *Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir. 1974).

## III. ANALYSIS

### A. The Price-Anderson Act Governs Boyer's Negligence Claims.

The District Court held the Price-Anderson Act applies to Boyer's claims asserting that Ware was harmed by radiation emitted from cesium-137 irradiators used in his lab. The Act provides for removal to federal court of any "public liability action arising out of or resulting from a nuclear incident." 42 U.S.C. § 2210(n). As noted, Boyer and UPenn agree that, if the Act applies, Boyer can only state a claim for relief if Ware received more than five rem of radiation per year.[3] It is undisputed that Ware's average annual radiation

---

[3] The NRC regulations the parties cite merely set out rules binding entities with licenses to hold certain nuclear materials. *See* 10 C.F.R. § 20.1201. Neither party offers any legal source that would limit liability under the Price-Anderson Act to cases where exposure exceeds § 20.1201's limits. But because Boyer accepts this limitation as true and failed to oppose summary judgment, we have no occasion to challenge it.

exposure was much less than five rem, so any claim to which the Act applies is not viable.

But that is not the worst of Boyer's situation: if the Price-Anderson Act applies, even her claims that don't stem from Ware's radiation exposure are lost as well. Boyer failed to oppose summary judgment on any of her claims (even those, like medical malpractice, that the parties agree are not governed by the Act). Thus, on appeal Boyer attempts to save her claims by contending that the District Court either lacked jurisdiction over her claims or abused its discretion by exercising it.

For these reasons, Boyer contends the Price-Anderson Act, which grew out of the federal Government's initial efforts to regulate nuclear weapons and power plants in the 1940s and '50s, does not apply to laboratory research. Her interpretation of the Act conflicts with its text, and she identifies no principle that would both rule out its application to Ware's research and be true to the Act's purpose and structure.

### 1.    *The Price-Anderson Act*

#### a. History

"With the object of encouraging the private sector to become involved in the development of atomic energy for peaceful purposes, Congress passed the Atomic Energy Act of 1954[], 68 Stat. 919, a broad scheme of federal regulation and licensing." *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 476 (1999) (internal brackets, quotation marks, and citation omitted). "[I]n 1957 Congress amended the [Atomic Energy Act] with the Price-Anderson Act, 71 Stat. 576[, which] provided certain federal licensees with a system of private insurance, Government indemnification, and limited

8

liability for claims of 'public liability,' now defined generally as 'any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation[.]" *Id.* (quoting 42 U.S.C. § 2014(w)).

Congress has continued to build on the Price-Anderson Act's foundation, expanding its scope and functions. The Act initially relied on state courts and state law to rule on and govern liability for nuclear accidents. *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 852 (3d Cir. 1991). However, amendments in 1966 "provided for the transfer, to a federal district court, of all claims arising out of an extraordinary nuclear occurrence"[4] and brought about greater uniformity of liability determinations while retaining state-law causes of action. *Id.* The amendments require indemnified entities "to waive the defenses of negligence, contributory negligence, charitable or governmental immunity, and assumption of the

---

[4] An "extraordinary nuclear occurrence" is

> any event causing a discharge or dispersal of source, special nuclear, or byproduct material from its intended place of confinement in amounts offsite, or causing radiation levels offsite, which the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, determines to be substantial, and which the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, determines has resulted or will probably result in substantial damages to persons offsite or property offsite . . . .

42 U.S.C. § 2014(j).

risk in the event of an action arising as the result of an extraordinary nuclear occurrence." *Id.*

"In the wake of the 1979 accident at the Three Mile Island nuclear power plant, suits proliferated in state and federal courts, but because the accident was not an 'extraordinary nuclear occurrence,' within the meaning of the Act, *see* § 2014(j), there was no mechanism for consolidating the claims in federal court." *El Paso Nat. Gas*, 526 U.S. at 477. So Congress acted again in 1988, providing for federal jurisdiction over any actions "asserting public liability" arising from a "nuclear incident," which generally includes any "occurrence" causing physical harm resulting from the radioactive properties of nuclear material. *See id.* The 1988 amendments also took another step toward federalizing the law applicable to nuclear accidents by providing that "any suit asserting public liability . . . shall be deemed to be an action arising under [the Price-Anderson Act]" rather than state law. 42 U.S.C. § 2014(hh).

These 1988 amendments, which are at the heart of this case, deliberately increased the scope of the Act's coverage. *See Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) ("'Nuclear incident' is not limited to a single, catastrophic accident: indeed, one purpose behind the 1988 amendments was to expand the scope of federal jurisdiction beyond actions arising from 'extraordinary nuclear occurrences' only." (citing *Kerr–McGee Corp. v. Farley,* 115 F.3d 1498, 1502 (10th Cir. 1997))). They provide federal jurisdiction in a wider variety of situations than the prior version of the law. *See, e.g.*, *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1133, 1140–42 (10th Cir. 2010) (claims of property owners at risk of nuclear material blowing onto their properties from nuclear weapons plant turned wildlife refuge); *Dumontier v. Schlumberger Tech. Corp.*, 543 F.3d 567, 569 (9th Cir. 2008) (claims of workers exposed to

10

cesium-137 carelessly left on oil drilling rig); *Acuna*, 200 F.3d at 338 (claims of workers, their family members, and nearby residents for harm from uranium mine).

Although the history of the Act's amendments tracks major events in the development of nuclear power and weapons, the Act's concerns are not so narrow. As noted above, Congress has "encourag[ed] the private sector to become involved in the development of atomic energy for peaceful purposes[.]" *El Paso Nat. Gas*, 526 U.S. at 476. Among the purposes pointed to by Congress at the outset of its plan for regulating atomic energy are "providing for . . . a program of conducting, assisting, and fostering research and development in order to encourage maximum scientific and industrial progress[,] . . . for the dissemination of unclassified scientific and technical information[,] and for the control, dissemination, and declassification of Restricted Data, subject to appropriate safeguards, so as to encourage scientific and industrial progress[.]" 42 U.S.C. § 2013. Highlighting the Act's scientific aims, § 2210(k) specifically sets certain financial requirements that apply to non-profit educational institutions.

b. Key Provisions

Today the Price-Anderson Act provides for the removal to federal court of any "public liability action arising out of or resulting from a nuclear incident." 42 U.S.C. § 2210(n). As the District Court commented, this "would seem to be a peculiar way to describe a case alleging that a researcher was injured while working on the campus of the University of Pennsylvania," *Ware v. Hosp. of the Univ. of Pennsylvania*, No. 2:14-CV-00014, 2016 WL 4702117, at *2 (E.D. Pa. Sept. 8, 2016), but any peculiarity simply derives from Congress' slow expansion of the Act's statutory definitions to bring a growing set of matters within its scope.

11

In essence, the Act provides federal jurisdiction over claims asserting legal liability for "any occurrence" causing physical harm or property damage resulting from the radioactive properties of nuclear material. 42 U.S.C. §§ 2014(q), (w), (hh) & 2210(n)(2). However, because its definitions are complicated, interlocking, and use words in unintuitive ways, it is worth pausing to consider the Act's key provisions.

Section 2210(n)(2) contains the jurisdictional grant:

> With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place . . . shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy.

That grant, in turn, depends on the definitions of "public liability action" and "nuclear incident." A "public liability action" is simply "any suit asserting public liability." *Id.* § 2014(hh).[5] And "public liability" means (apart from

---

[5] Under the Price-Anderson Act "the substantive rules for decision in [a public liability] action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of [the Act]." 42 U.S.C. § 2014(hh). That is, although (1) the case proceeds in federal court, (2) the cause of action is itself federal, and (3) certain state-law defenses may not be raised, *see* 42 U.S.C. §§ 2014(hh) & 2210(n)(1), state law nonetheless will provide the elements of any public liability action except to the extent that a provision of the Act requires something different.

certain exceptions not relevant here) "any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation." *Id.* § 2014(w). That brings us to "nuclear incident":

> The term "nuclear incident" means any occurrence, including an extraordinary nuclear occurrence, . . . causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material[.]

*Id.* § 2014(q).

This definition of "nuclear incident" is facially quite broad, and, because the definitions above all rely on it, the Price-Anderson Act's jurisdictional grant is also broad.

### 2. *Boyer's Price-Anderson Claims*

Despite these expansive definitions, Boyer contends the District Court erred when it held that the Price-Anderson Act applied to all of her claims alleging that Ware was harmed by radiation from cesium-137 used in his lab. We disagree.

The Act's text maps neatly onto Boyer's allegations. There is no dispute that cesium-137 is a "byproduct material,"[6] and, according to Boyer, its radioactive properties

---

[6] *See* 42 U.S.C. § 2014(e) (defining "byproduct material"); *Dumontier*, 543 F.3d at 569 (applying § 2014(q) to injuries caused by cesium-137).

caused Ware's "bodily injury, sickness, disease, [and ultimately] death." 42 U.S.C. § 2014(q). As long as we give the word "occurrence" its ordinary meaning—"something that takes place; esp. something that happens unexpectedly and without design; or the action or process of happening or taking place," *Carey v. Kerr–McGee Chem. Corp.*, 60 F. Supp. 2d 800, 805 (N.D. Ill. 1999) (quoting Webster's Third New International Dictionary (1993))—the facts alleged constitute a "nuclear incident" under § 2014(q).

Boyer claims UPenn bears legal liability arising from this nuclear incident, so what she alleges is "public liability" under § 2014(w). Any suit asserting public liability is a "public liability action . . . arising under section 2210" of the Price-Anderson Act. *Id.* § 2014(hh). Accordingly, per § 2210(n)(2) the District Court had jurisdiction over Boyer's claims, and UPenn had the right to remove them to federal court.

Boyer nonetheless raises arguments why the Act does not apply. There may exist some limiting principle that would effectively cabin the sweeping language Congress used to describe any nuclear incident subject to the Act, but none is persuasive here.

As noted, the Price-Anderson Act's history largely tracks major events in the development of the nuclear power and energy industries. Thus Boyer's first argument is that its jurisdictional grant applies *only* to nuclear accidents involving nuclear power plants or weapons facilities. For support, she looks to cases, agency fact-sheets, and academic publications summarizing the Act's applicability. *E.g.*, *In re TMI II*, 940 F.2d at 855 ("[T]here can be no action for injuries caused by the release of radiation from federally licensed nuclear power plants separate and apart from the federal public liability action created by the [Price-Anderson] Act [amendments of

14

1988].”); *See Acuna*, 200 F.3d at 339 (“The Price Anderson Act sets up an indemnification and limitation of liability scheme for public liability arising out of the conduct of the nuclear energy and weapons industries.”); United States Nuclear Regulatory Commission, *Nuclear Insurance and Disaster Relief*, https://www.nrc.gov/reading-rm/doc-collections/fact-sheets/nuclear-insurance.pdf (December 2014) (“The Price-Anderson Act . . . cover[s] liability claims of members of the public for personal injury and property damage caused by a nuclear accident involving a commercial nuclear power plant.”); Dan M. Berkovitz, *Price-Anderson Act: Model Compensation Legislation?–the Sixty-Three Million Dollar Question*, 13 Harv. Envtl. L. Rev. 1, 1 (1989) (“The Price-Anderson Act[’s] . . . coverage for NRC licensees encompasses activities of commercial nuclear power plants, certain fuel fabrication facilities, and non-[Department of Energy] reactors used for educational and research purposes.”).

Boyer contends these descriptions limit the Act’s application regardless of what is in its text. But the summaries she cites do not purport to explore its scope. They merely give the reader a rough sense of the Act’s general purpose. *In re TMI II*, for example, addresses “federally licensed nuclear power plants” because that’s what the case was about. 940 F.2d at 835.[7] No one would take a court’s statement that

_____

[7] True, one District Court has cited the Fifth Circuit’s *Acuna* decision for the proposition that “the [Price-Anderson Act] *only* applies to the nuclear energy and weapons industries.” *Samples v. Conoco, Inc.*, 165 F. Supp. 2d 1303, 1321 (N.D. Fla. 2001) (emphasis in original) (calling a plain text reading of the statute “Hogwash!”). But a close reading suggests *Samples*’ real concern was the defendants’ attempt to use the Act’s tail to wag the dog. They sought to apply the Act to the

"Title VII of the Civil Rights Act provides a cause of action to employees fired because of their race" to mean Title VII provides no cause of action to individuals suffering discrimination on the basis of sex, religion, or national origin.

What is more, the Price-Anderson Act plainly applies in at least some contexts to research universities, as it has provisions that cover specifically institutions like the University of Pennsylvania. Section 2210(k) provides that "nonprofit educational institution[s]" conducting "educational activities" pursuant "to any license issued" under the federal atomic energy scheme shall be indemnified by the NRC for "public liability in excess of $250,000 arising from nuclear incidents." 42 U.S.C. § 2210(k)(1). "[C]ontracts of indemnification [entered into by the institution and the

---

plaintiffs' action because uranium was listed among "the [many] hazardous substances found in the sludge ponds" at a chemical waste site. *Id.* at 1320 n.16. The Court evidently found this connection farfetched and gave the Price-Anderson argument short shrift.

Moreover, *Samples* later suggests that a defendant's possession of a license to handle nuclear materials would trigger the Act's reach. *Id.* at 1321 ("The Defendants have failed to provide the Court with proof demonstrating they are a [Department of Energy] contractor or an NRC licensee. Therefore, Plaintiffs' lawsuit does not state a cause of action under the [Price-Anderson Act.]"). As we discuss below, UPenn had such a license. Thus, depending on how one reads *Samples*—i.e., (1) the Act applies only to the nuclear power and weapons industries or (2) the Act applies only to the holders of licenses to possess nuclear materials—even that Court could have held UPenn to be covered by the Act.

16

Commission] shall cover public liability arising out of or in connection with the licensed activity[.]" 42 U.S.C. § 2210(k)(2). This section also exempts these licensed institutions from certain "financial protection" requirements under the Act. *Id.* It would make no sense for the Act to contain these provisions if it did not apply outside the weapons and energy industries. That is, Congress' choice to include a provision indemnifying licensed nonprofit educational institutions from public liability suggests strongly (perhaps overwhelmingly) that the Act applies to them.[8]

Boyer next argues, following the reasoning of a District Court in our Circuit, that even if the Price-Anderson Act applies to a broad set of industries, it only covers defendants that have indemnity agreements with the NRC. *See Gilberg v. Stepan Co.*, 24 F. Supp. 2d 325, 339 (D.N.J. 1998), *supplemented,* 24 F. Supp. 2d 355 (D.N.J. 1998).

---

[8] In the alternative, Boyer claims that, even if the Price-Anderson Act applies to university research labs, it applies only to labs that operate nuclear reactors. She cites no portion of the Act in favor of this position. The most she does is point to regulations dealing with indemnity agreements required for institutions that do use reactors. *See* 10 C.F.R. § 140.72. But the existence of regulations specifying requirements for institutions with reactors does not imply that those without them are somehow exempt from the Act entirely. She goes on to cite the NRC's list of institutions with nuclear reactors in Pennsylvania and notes the University's absence. *See* United States Nuclear Regulatory Commission, https://www.nrc.gov/info-finder/region-state/pennsylvania.html. Its presence on the reactor list is relevant only if having a reactor is a prerequisite to the Act's coverage, and we see no reason to hold that it is.

Noting § 2014(q)'s broad definition of "nuclear incident," the *Gilberg* Court looked for a limit to its reach in the nearby definition of "extraordinary nuclear occurrence." *Id.* (Recall that extraordinary nuclear occurrences were the only events that triggered federal jurisdiction before the 1988 Price-Anderson Act amendments.) Following a long and complicated analysis of the Act's history and structure, *Gilberg* concluded that a nuclear incident may only occur (and the Act applies) when harm happens at a site covered by an indemnification agreement with the NRC. *Id.* The University of Pennsylvania has no such agreement, Audio Recording of Oral Argument held June 28, 2017 at 31:23 to 31:40 (http://www2.ca3.uscourts.gov/oralargument/audio/16-3801EstateofJeffreyHWarevHospitaloftheUnivesityofPennsylvaniaetal.mp3); so, the argument goes, its negligence toward Ware did not cause a nuclear incident.

We are unpersuaded that an indemnification agreement is necessary to trigger the Act's applicability. What *Gilberg* misses is that "one purpose behind the 1988 amendments was to expand the scope of federal jurisdiction beyond actions arising from 'extraordinary nuclear occurrences[.]'" *Acuna*, 200 F.3d at 339 (citing *Kerr–McGee,* 115 F.3d at 1502). Indeed, that is why the definition of "nuclear incident" is so broad. *Id.* Thus we agree with the Fifth Circuit's conclusion that *Gilberg*'s "attempts to reintroduce the limitations of 'extraordinary nuclear occurrence' into the 1988 amendments' substitution of 'nuclear incident' rely on faulty statutory interpretation and are contrary to Congressional intent." *Id.* (citing *Carey,* 60 F. Supp. 2d at 803–07).

The remaining arguments suffer from the same flaw. Even if we were to accept the limiting principles Boyer proposes, her claims would still be governed by the Act. For this reason, we have no need to pass on whether the Act is

18

limited in the remaining ways Boyer suggests. We note only that, even so, the outcome here would be no different.

Boyer argues that the Act applies only when a defendant has a license to possess nuclear materials. Indeed, § 2210(k)'s reference to "any license issued" under the federal scheme for atomic energy could be read to suggest that universities are covered by Price-Anderson only when they hold a license to use the materials involved in any nuclear incident. One District Court has held that, regardless of the type of institution in question, the Act applies exclusively to entities holding licenses. *Irwin v. CSX Transp., Inc.*, No. 3:10-CV-300, 2011 WL 976376, at *2 (E.D. Tenn. Mar. 16, 2011). And the unpersuasive *Samples* opinion mentioned above in footnote 7 gives a nod to that view as well, 165 F. Supp. 2d at 1321 ("the word occurrence as used in the definition of nuclear incident means that event at the site of the *licensed activity, or activity for which the Commission has entered into a contract*, which may cause damage" (internal quotation marks and citations omitted) (emphasis in original)). For this reason too, Boyer asserts, UPenn is not covered by the Act.

But the University of Pennsylvania has such a license. Its license to engage in research using cesium-137 irradiators was issued by the Pennsylvania Department of Environmental Protection Bureau of Radiation Protection, which exercises delegated authority from the NRC per § 274 of the Atomic Energy Act of 1954, 42 U.S.C. § 2021. Boyer says that's not good enough; the license must be issued by the NRC directly. Her argument, however, is hard to follow.

The Price-Anderson Act is part of the Atomic Energy Act. The latter gives the NRC authority to enter into agreements with states allowing them to issue licenses in the NRC's stead. *See* 42 U.S.C. § 2021. In her Reply, Boyer

seems to argue that, because UPenn has a state-issued license, only state nuclear regulations apply to its and its affiliates' conduct, and thus the Price-Anderson Act does not apply to her suit. But Boyer never says why this would be true. Indeed, our sister Circuit has held that "[t]here is nothing in the definition of 'nuclear incident' which suggests [the Act's application] should be contingent on whether the occurrence took place in a state which regulates its own [nuclear material] industry under NRC guidelines" or leaves that regulation to the NRC directly. *Acuna*, 200 F.3d at 339. We thus reject the argument that UPenn's state-issued license is meaningfully different in this context from a license issued directly by the NRC. As a result, even if Boyer is correct that possession of a license is the lynchpin for Price-Anderson's applicability, UPenn's license would satisfy that requirement here.[9]

Next up is Boyer's claim that the Act applies only to unintentional releases of nuclear energy. For support, she looks to one District Court that declined to apply the Act to claims of cancer patients intentionally subjected to radiation because "all of the cases applying the Price–Anderson Act have extended potential liability only to the *unintended* escape or release of nuclear energy." *In re Cincinnati Radiation Litig.*, 874 F. Supp. 796, 832 (S.D. Ohio 1995) (emphasis added). Boyer contends her claims similarly do not implicate an unintentional release of nuclear energy. But that's not true. Her complaint alleges that Ware was harmed by UPenn's neglect of its duty to protect him adequately from

---

[9] We do not hold that possession of a license determines the Act's applicability. Rather, we note only that, if having a license matters in this context, it makes no difference whether the license was issued by the NRC directly or by a state acting under delegated authority.

radiation—that is, negligence, not deliberate exposure. So even if this exception to the Act exists, it wouldn't apply to this case.

Finally, the *Cincinnati Radiation* Court also noted that, during the legislative process leading to the 1988 amendments, Congress considered explicitly expanding the Act's reach to cover "persons operating nuclear pharmacies or hospital medicine department[s,]" but declined to enact the expansion. *Id.* at 832 n.33 (citing S. Rep. No. 100–218, at 18 (1988), *reprinted as* 1988 U.S.C.C.A.N. 1476, 1493). So, Boyer argues, we should hold Congress' failure to adopt this language implies a limit on the Act's application to harm from radiation used for medical care.

But even if we were to read so much into Congress' inaction, it wouldn't help Boyer. The cesium-137 irradiators that allegedly harmed Ware were not used for patient care or any medical purpose nor were they kept in a nuclear pharmacy. They were used for research only and kept in a lab. The language Congress declined to enact simply has nothing to do with the facts of this case.

None of this is to say that the Act applies to all harm occurring from nuclear material in any situation whatsoever. Counsel for UPenn conceded at oral argument that any nuclear incident must, at the very least, involve "source, special nuclear, or byproduct material[.]" *See* 42 U.S.C. § 2014(q). According to counsel, that limitation would exempt harm arising from, among other things, x-rays, CAT scans, and naturally occurring uranium and radium. Audio Recording of Oral Argument held June 28, 2017 at 32:30 to 33:18 (http://www2.ca3.uscourts.gov/oralargument/audio/16-3801EstateofJeffreyHWarevHospitaloftheUnivesityofPennsylvaniaetal.mp3). Moreover, as mentioned, we do not decide whether the possession of a license, the intent of any nuclear

21

energy release, or the medical use of nuclear material, might affect the Act's applicability to a particular case. We note only that these implicit limitations on the Price-Anderson Act's scope would not preclude its application here.

*    *    *    *    *

In sum, Boyer's claims alleging that Ware's cancer developed because UPenn negligently exposed him to cesium-137 are covered by the Price-Anderson Act. The claims allege a "nuclear incident" in that they describe an "occurrence . . . causing . . . bodily injury, sickness, disease, or death . . . arising out of or resulting from the radioactive . . . properties of . . . byproduct material[.]" 42 U.S.C. § 2014(q). Boyer contends UPenn is liable for the harm arising from this nuclear incident, so her action is a "public liability action" subject to federal court jurisdiction. *Id.* §§ 2014(w), (hh) & 2210(n)(2). We know no compelling limiting principle that would bar this straightforward application of the Act's text to her case, so we affirm the District Court's exercise of jurisdiction.

### B. The District Court Did Not Err When It Declined to Permit Voluntary Dismissal of the Price-Anderson Claims and Retained Jurisdiction over Boyer's Remaining Claims.

When Boyer failed to convince the District Court that the Price-Anderson Act did not apply to her negligence claims (and later discovered that she would be unable to make the showing necessary to prevail on them), she asked to withdraw them and remand the remaining claims to state court. This tactic failed when the Court ruled that Boyer could not withdraw her claims so late in the game and thus retained jurisdiction over the entire case. It went on to grant summary

22

judgment to the UPenn defendants on all of Boyer's claims because she failed to oppose any of their motions.

Boyer argues the District Court abused its discretion by denying her request to withdraw her Price-Anderson negligence claims and by refusing to remand the remainder of her claims. For the reasons that follow, we disagree.

### 1. *Motion to Withdraw*

Federal Rule of Civil Procedure 41 provides that a "plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal *before* the opposing party serves either an answer or a motion for summary judgment[.]" Fed. R. Civ. P. 41(a) (emphasis added). Boyer waited to withdraw her Price-Anderson claims until after UPenn had filed its answer. At that point, any dismissal could occur "only by court order[] on terms that the court considers proper." *Id.*; *accord Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir. 1974) (once an answer has been filed, whether to permit dismissal is left to the discretion of the District Court).

Of course, the District Court's discretion is not without limit. It must consider "the presence or extent of any prejudice to the defendant by the draconian measure of dismissing [a] plaintiff's complaint." *Ferguson*, 492 F.2d at 29. We have noted that "Rule 41 motions 'should be allowed unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit.'" *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990) (citing 5 J. Moore, *Moore's Federal Practice* ¶ 41.05[1], at 41–62 (1988)). The record reflects that UPenn would indeed have suffered prejudice had the Price-Anderson negligence claims been withdrawn.

23

The Magistrate Judge held that the Act applied to at least some of Boyer's claims in May 2014, and the District Court adopted the Magistrate Judge's Recommendation in full in December 2014. By the time Boyer filed her withdrawal motion a year later in December 2015, UPenn had produced five expert reports and thousands of pages of documents and had filed one of its four motions for summary judgment (the other three would follow the next month).

These facts are of a piece with *Ferguson*, 492 F.2d at 29, which held that a District Court abused its discretion by granting withdrawal "[f]ourteen months after [the objecting parties] became defendants in one case and had gone to the expense of retaining counsel, six months after they had gone through pre-trial, and at least two months after they had expected that all discovery had been completed[.]" Were Boyer permitted to withdraw her claims without prejudice, UPenn would have faced the prospect of potentially relitigating, at some later date, claims it had put significant time and resources into defending and already litigated to the summary-judgment stage. Thus we have no doubt the District Court acted within its discretion when it denied Boyer's motion.

### 2.    Retention of Jurisdiction over Boyer's Remaining Claims

Boyer contends the District Court abused its discretion by retaining jurisdiction over her remaining claims of fraud, negligent infliction of emotional distress, medical malpractice, and corporate negligence. We again disagree.

Per 28 U.S.C. § 1367, the District Court had authority to exercise supplemental jurisdiction over any state-law claims. Even had it permitted withdrawal of claims governed by the Price-Anderson Act, the Court would not have lost

24

jurisdiction to hear any state-law claims "that are so related to [the federal] claims . . . that they form[ed] part of the same case or controversy." *Id.*; *cf. Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513–14, (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to § 1367, over pendent state-law claims."). And Boyer offers no argument that her state-law claims were not part of the same case or controversy as those governed by the Price-Anderson Act. We have explained that the decision to retain supplemental jurisdiction "should be based on considerations of judicial economy, convenience and fairness to the litigants." *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (internal quotation marks omitted). As discussed above, the parties had already engaged in significant litigation before the District Court, so values of economy, convenience, and fairness all supported its retention of jurisdiction. We see no reason to second-guess it now.[10]

## IV.    CONCLUSION

The facts of Boyer's action are tragic: her husband, a 47-year-old researcher whose life's work was studying the effects of radiation on biological organisms, died from a rare form of brain cancer. But as often happens in the law, this case provides us little opportunity to contemplate Ware's

---

[10] The District Court held that its retention of jurisdiction was all the more appropriate because Boyer's claims of fraud and negligent infliction of emotional distress were in fact federal claims governed by the Price-Anderson Act. Because we hold that the District Court properly exercised supplemental jurisdiction over Boyer's "state-law" claims per § 1367, we do not reach this alternative jurisdictional ground.

suffering from his illness or his family's suffering from his loss. Instead, our review is confined to bloodless questions of statutory interpretation and appropriate management of litigation. On these issues we find no fault with the District Court's holdings. The Price-Anderson Act governed Boyer's negligence claims, and the Court did not abuse its discretion in denying her request to withdraw those claims and to remand her others. We thus affirm its judgment.