PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-1366
_____

FAIR HOUSING RIGHTS CENTER IN
SOUTHEASTERN PENNSYLVANIA,
                                                          Appellant

v.

POST GOLDTEX GP, LLC; POST GOLDTEX, L.P.;
KLINGSTUBBINS, LLP; KLINGSTUBBINS, INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court Civil No. 2-14-cv-04441)
District Judge:  Honorable Ronald L. Buckwalter

Submitted Under Third Circuit LAR 34.1(a)
October 6, 2015

BEFORE:  FUENTES, SMITH, and NYGAARD,
*Circuit Judges*

(Filed: May 17, 2016)

Stephen F. Gold, Esq.
1709 Benjamin Franklin Parkway, 2nd Floor
Philadelphia, PA 19103

Rocco J. Iacullo, Esq.
Disability Rights Network of Pennsylvania
1315 Walnut Street, Suite 500
Philadelphia, PA 19107

*Counsel for Appellant*

Walter S. Zimolong, III, Esq.
1429 Walnut Street, Suite 1201
Philadelphia, PA 19102

*Counsel for Appellee Post Goldtex*

Anthony W. Hinkle, Esq.
Kathryn E. Pettit, Esq.
Kevin B. Watson, Esq.
Cipriani & Werner
450 Sentry Parkway, Suite 200
Blue Bell, PA 19422

Barbara W. Mather, Esq.
Pepper Hamilton
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103

*Counsel for Appellee KlingStubbins*

_____

OPINION OF THE COURT

_____

NYGAARD, *Circuit Judge*.

Today, we address a somewhat abstruse question of federal housing law: do the design and accessibility requirements of the Fair Housing Act (FHA), 42 U.S.C. § 3604(f)(3)(C), apply to a commercial building that was originally constructed before the requirements' effective date, but converted into residential units after that date? The District Court noted the near absence of precedent on this question, an absence our own research confirms. Perhaps the lack of precedent on this question has something to do with the clear guidance offered by the United States Department of Housing and Urban Development (HUD) and, in one instance, the United States Department of Justice (DOJ) on this issue, which answers the question in the negative.

To resolve this matter, the District Court relied on the familiar two-step analysis set out in *Chevron, USA v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). In doing so, the District Court first found that Congress, speaking through § 3604(f)(3)(C), left unanswered the precise question at issue here. Second, owing to this ambiguity, the District Court concluded that HUD's interpretation of the provision—which exempts converted buildings from the accessibility requirements[1] if they were constructed prior to March 13,

_____

[1] This provision states that these requirements apply "in connection with the design and construction of covered

3

1991—was entitled to deference. Based on this determination, the District Court dismissed the complaint for failure to state a claim. We will affirm that ruling.

I.

Because this is an appeal from the granting of a motion to dismiss, we take the following factual background directly from the complaint and accept as true all facts set forth therein, drawing all reasonable inferences from such allegations in favor of the Appellant. *Mammaro v. New Jersey Div. of Child Protection and Permanency*, 814 F.3d 164, 166 (3d Cir. 2016) (citing *James v. City of Wilkes–Barre*, 700 F.3d 675, 679 (3d Cir. 2012)). Appellant Fair Housing Rights Center in Southeastern Pennsylvania (FHRC), a non-profit corporation, provides counseling, reference, advocacy, and dispute resolution services to individuals who may have suffered from discriminatory housing practices throughout southeastern Pennsylvania. This organization also receives grants and contracts HUD, under 42 U.S.C. § 3616, to investigate and monitor potentially discriminatory housing practices, and to enforce HUD policies. One of the housing projects investigated by the FHRC was the Goldtex Apartment Building, located on North 12ᵗʰ Street in the city of Philadelphia. That building was developed and owned by Appellees Post Goldtex GP, LLC and Post Goldtex, L.P. (collectively referred to as "Goldtex"). Appellees KlingStubbins, LLP and

multifamily dwellings for first occupancy after [March 13, 1991]." We refer to the standards established by § 3604(f)(3)(C) as the "design and construction requirements" or, more simply, the "requirements."

4

KlingStubbins, Inc., (collectively referred to as "KlingStubbins"), designed the apartment complex.

The building, constructed in 1912, was known originally as the Smaltz Building and was used first as a factory, and later for other manufacturing and business pursuits until the mid-1990s. By the end of that decade, the Smaltz Building was abandoned and had fallen into disrepair. Goldtex purchased the Smaltz Building in 2010 and hired KlingStubbins to design a plan to convert the entire building into rental apartment units and retail space. Pursuant to KlingStubbins' design, the building—now known as the Goldtex Building—was almost gutted. This included the removal of walls and windows, and the cladding of the exterior with new materials. Other features, such as floors, remained intact. The result was the conversion of a building originally used for manufacturing into a residential building with 163 apartment units and ground floor retail space. The Goldtex Building began accepting tenants in 2013.

The FHRC conducted a site visit at the Goldtex Building in April of 2014 and reviewed the common areas of the facility as well as three different-sized rental units. This investigation identified numerous violations of the FHA's design and construction requirements.[2] The FHRC sent these

---

[2] Among the noted violations were a main entrance door that was too heavy and the lack of an automatic door opener, entry doors on units that were less than 32 inches, units with thresholds into the entry hallway exceeding ¾ of an inch, units with interior doors less than 32 inches, units with passageways less than 36 inches, and units with kitchen counters too high for persons in wheelchairs.

findings, in detail, to Goldtex, along with a request that the violations be removed and/or repaired. Goldtex responded, indicating their position that the Goldtex Building was exempt from the FHA requirements cited by the FHRC.

The FHRC filed suit against Goldtex and KlingStubbins in July of 2014, alleging violations of the FHA which, in turn, constituted housing discrimination against persons with disabilities.[3] Goldtex and KlingStubbins filed motions to dismiss, which the District Court granted.[4] The FHRC timely appealed.

---

[3] Congress amended the FHA in 1988 to expand its protections from housing discrimination to persons with disabilities. We recognized this expansion to be "a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream." *Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1105 (3d Cir. 1996). Therefore, under the FHA, it is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . a person residing in or intending to reside in the dwelling." 42 U.S.C. § 3604(f)(1)(B).

[4] Goldtex and KlingStubbins also filed motions for sanctions under Fed. R. Civ. P. 11, which the District Court denied. The denial of those motions has not been appealed.

6

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's decision to grant a motion to dismiss under a plenary standard. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009). That means we are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014) (quotation marks and citations omitted). In *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court explained, however, that this tenet "is inapplicable to legal conclusions." Questions of statutory interpretation are subject to de novo review. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003).

III.

In suing Goldtex and KlingStubbins, the FHRC's complaint alleged that the Appellees discriminated against persons with disabilities by violating the design and construction requirements of the FHA, as set forth in that Act's § 3604(f)(3)(C). The FHRC also alleged housing discrimination pursuant to 42 U.S.C. § 3604(f)(1) and § 3604(f)(2), and asked the District Court for a declaratory judgment that Goldtex and KlingStubbins' actions and omissions violated the FHA, for a permanent injunction requiring Goldtex to bring the building into compliance, and for monetary damages, attorney fees and costs.

Goldtex and KlingStubbins filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The Appellees argued

7

that the complaint should be dismissed because the plain language of § 3604(f)(3)(C), as well as HUD guidance on that provision, exempted the Goldtex Building from compliance. In its response in opposition to the motions to dismiss, the FHRC argued that HUD's regulatory interpretations were invalid because, under *Chevron*, they are contrary to the unambiguous language of the statute. The Appellees, in reply, argued that the FHRC could not raise a challenge to HUD's interpretation of the provision unless through its complaint, and then could only do so via a claim under the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.* KlingStubbins also raised a standing argument.[5] The District Court did not address these arguments, but instead saw this case as governed by *Chevron* and proceeded directly to analyze the FHCA's claim under that decision.

---

[5] On appeal, Appellant KlingStubbins argues that the FHRC lacks standing because the FHRC suffered no injury. The FHRC has standing. The Supreme Court specifically held that a fair housing group, like the FHRC, has standing to sue if the discriminatory practices it is challenging have impaired its ability to carry out its mission. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1983); *see also Alexander v. Riga*, 208 F.3d 419, 427 n.4 (3d Cir. 2000). The FHRC's complaint alleges that the Appellees engaged in discriminatory housing practices, and that its mission to eradicate housing discrimination has been frustrated because it has had to divert resources in order to investigate and prosecute the alleged discriminatory practices in this case. These allegations are sufficient to establish standing. And, as we have held, the allegation of discrimination is itself the harm. *Id.* at 424.

8

Like the District Court, we too will apply *Chevron* to resolve the merits of this appeal. At Step One, we "question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842. We move on to the second step only "if the statute is silent or ambiguous with respect to the specific issue." *Id*. at 843. There, "the question for the court is whether the agency's answer is based on a permissible construction of the statute," and the regulation must be given deference unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 843, 844.

Both parties tell us that we can decide this case at Step One because Congress answered the precise question at issue in the plain language of the provision. The problem, however, is that they do not agree on what that answer was. The FHRC, for example, maintains that the plain language of the provision, as well as its general context, reveal Congress' intention that the FHA's accessibility requirements apply to any dwellings constructed and first occupied after the provision's effective date—regardless of when the actual building was constructed. For their part, the Appellees argue that the language of § 3604(f)(3)(C) unambiguously supports their contention that Congress did not intend to limit the term "occupancy" to residential occupancy. They assert, for example, that because the language does not specifically limit the term "occupancy" to a residential context, Congress unambiguously intended the design and construction provision to apply to any building—residential, commercial, or otherwise.

9

To determine whether a statute is unambiguous under Step One, "court[s] should always turn first to one cardinal canon before all others [:] we have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Geisinger Cmty. Med. Ctr. v. Sec'y U.S. Dep't of Health and Human Servs.,* 794 F.3d 388, 391 (3d Cir. 2015) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). Put more simply, "[w]here the statutory language is plain and unambiguous, further inquiry is not required." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001). Mindful then of this framework, we start with the text of § 3604(f)(3)(C).

This particular provision states that the FHA's accessibility requirements apply to "the design and construction of covered multi-family dwellings for first occupancy after the date that is 30 months after September 13, 1988." 42 U.S.C. § 3604(f)(3)(C). Like the District Court, we cannot divine Congress' answer to the precise question at issue here by looking to the statute's plain language. That is, we cannot conclude that the statute, on its face, specifies that building conversions fall within the FHA's reach. On the one hand, "design and construction of . . . dwellings" seems to indicate that the focus of the statute is on the construction of the dwelling itself, not the building the dwelling is housed in. An argument can be made, on the other hand, that we should read the phrase "construction of . . . dwellings for first occupancy" to mean that the statute only covers dwellings that are constructed for first occupancy as dwellings, that is, new construction, not conversions.

10

The statute's failure to define two important terms—occupancy and construction—creates additional ambiguity. When words are left undefined, we often consult "standard reference works such as legal and general dictionaries in order to ascertain" their ordinary meaning. *United States v. Geisinger*, 527 F.3d 288, 294 (3d Cir. 2008). Here, those definitions are not helpful. "Occupancy" is defined as the "taking possession of a property and the use of the same." *Black's Law Dictionary* 973 (5th Ed. 1979). No distinction is made in this definition between taking possession of residential or commercial property. Therefore, we cannot tell whether Congress intended to limit the accessibility requirements to residential occupancy or commercial occupancy, or both. The definition of the term "construction" is likewise unhelpful. That term has been defined as "the creation of something new, as distinguished from the repair or improvement of something already existing." *Id.* at 283. This definition does nothing to answer the question whether the accessibility requirements apply to old, existing commercial buildings that were later converted for residential purposes. Instead, it further muddies the waters. That new creation could certainly be a brand new edifice, built from the ground up, but the same definition could also encompass an older commercial building that has been newly retrofitted for use as a residential apartment building. Therefore, because this provision is susceptible to more than one interpretation, it cannot reveal the clear intention of Congress to require buildings constructed before March 13, 1991, but remodeled after that date, to comply with the accessibility requirements. Thus, we move on to the second step in the *Chevron* analysis to determine whether HUD's interpretations of that provision are reasonable and permissible.

11

Under *Chevron*, "if a statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. That is, "the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). Put another way, given §3604(f)(3)(C)'s ambiguity on the question of its application to the Goldtex Building, we must now take into consideration HUD's regulatory interpretations and the FHA's implementing regulations. These undermine the FHRC's position in this case.

HUD is the federal agency primarily responsible for the implementation and administration of the FHA, and through various regulations and commentary, has supplied answers to the very question under review here. *See Meyer v. Holley*, 537 U.S. 280, 287-88 (2003). The agency has defined "first occupancy" to mean "a building that has never before been used for any purpose." 24 C.F.R. § 100.201. This definition takes the Goldtex Building out of the ambit of § 3604(f)(3)(C) because it was first occupied when it was built in 1912, and used for several purposes since then. The building was not first occupied, in other words, when its residential tenants moved-in in 2013. We agree with the District Court that since the language of the provision does not "unambiguously forbid" HUD's interpretation, nor does it exceed "the bounds of the permissible," it is reasonable and should be afforded deference. *See Barnhart v. Walton*, 535 U.S. 212, 217-18 (2002).

12

Further, in responding to concerns about a potential conflict between § 3604(f)(3)(C) and local historical codes, especially as those concerned the conversion of warehouse and commercial space to dwelling units, HUD unequivocally stated that:

> Comment. Two commenters expressed concern about a possible conflict between the Act's accessibility requirements and local historic preservation codes (including compatible design requirements). The commenters stated that their particular concerns are: (1) The conversion of warehouse and commercial space to dwelling units; and (2) new housing construction on vacant lots in historically designated neighborhoods.
>
> Response. *Existing facilities that are converted to dwelling units are not subject to the Act's accessibility requirements. Additionally, alteration, rehabilitation, or repair of covered multifamily dwellings are not subject to the Act's accessibility requirements. The Act's accessibility requirements only apply to new construction.*

13

> With respect to new construction in neighborhoods subject to historic codes, the Department believes that the Act's accessibility requirements should not conflict with, or preclude building designs compatible with historic preservation codes.

Final Fair Housing Accessibility Guidelines, 56 FR 9472–01 (emphasis added). Also, a Joint Statement from the United States Department of Justice and HUD further supports our conclusion that the agency's definition of the term "occupancy" takes the Goldtex Building out of the statute:

> 16. *Do the Fair Housing Act's design and construction requirements apply to the alteration or renovation of nonresidential buildings into residential buildings?*
>
> *No. First occupancy means a "building that has never before been used for any purpose." The conversion of a nonresidential building into a residential building through alteration or renovation does not cause the building to become a covered multifamily dwelling.* This is true even if the original nonresidential building was built after March 13,

14

1991. This situation needs to be distinguished, however, from additions of covered multifamily dwellings (see questions 12, 13 and 14, above). *See* 24 C.F.R. § 100.201; Questions and Answers, Q. 4, 8 and 9, 59 Fed.Reg. at 33, 364–65.

Example: A warehouse built in 1994 is being rehabilitated into a small condominium residential building with two stories and a total of 12 dwelling units. This conversion of this building is not covered because at the time of its first occupancy it was not designed and constructed as a covered multifamily dwelling.

*Joint Statement on Accessibility (Design and Construction Requirements) for Covered Multifamily Dwellings under the Fair Housing Act* (Apr. 30, 2013), http://www.ada.gov./doj_hud_statement.pdf (emphasis added). HUD, in both interpretive regulations and in other guidance, has been consistent in concluding that the accessibility requirements do not apply to buildings like the Goldtex Building because it was not newly constructed and was not first occupied after the effective date of the requirements. These interpretations are reasonable and certainly reflect a legitimate policy choice by the agency in administering an ambiguous statute. Therefore, like the

District Court, we defer to HUD's reasonable interpretation of this provision.

IV.

For the foregoing reasons, we will affirm the ruling of the District Court dismissing the FHRC's complaint.