**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1980
_____

K. W., A minor, by and through his parent and guardian Delores White;
DELORES WHITE, in her own right;
WILLIAM A. LOVE, Esquire, as administrator of the Estate of Sheena White, Deceased,
Appellants

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY;
RONNIE MCGILL; PASQUALE T. DEON, SR.; JOSEPH M. CASEY;
SCOTT SAUER; MICHAEL R. LIBERI; NEW FLYER INDUSTRIES CANADA ULC;
NEW FLYER OF AMERICA INC; ROSCO INC
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-16-cv-05578)
Chief District Judge: Hon. Juan R. Sanchez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 15, 2019
_____

Before: GREENAWAY, JR., SHWARTZ, and PORTER, <u>Circuit Judges</u>.

(Filed: January 17, 2019)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Sheena White and her son K.W. were hit by a Southeastern Pennsylvania Transportation Authority ("SEPTA") bus. K.W. (by and through Delores White), Delores White, and William Love (administrator of Sheena White's estate) (collectively, "Plaintiffs") allege that by placing a defective bus into service on the date of the accident, SEPTA and its employees produced a state-created danger that violated their due process rights. Because the District Court correctly dismissed this claim, we will affirm.

I[1]

Sheena and K.W. were crossing the street when a SEPTA bus made a left turn and struck them. Sheena was pronounced dead at the scene and K.W. suffered serious injuries. SEPTA purchased the bus involved in the accident from Defendant New Flyer of America, and it was equipped with a mirror system made by Defendant Rosco, Inc.

Plaintiffs sued SEPTA, the driver of the SEPTA bus, and various SEPTA managers and executives (collectively, the "SEPTA Defendants"); New Flyer of America and the company's Canadian parent; and Rosco, Inc., in the Pennsylvania Court of Common Pleas. With respect to the SEPTA Defendants, Plaintiffs allege that the size, shape, configuration, and placement of the Rosco driver-side mirror on the New Flyer buses created an unreasonable obstruction of the driver's view resulting in a high

---

[1] "Because this is an appeal from [an order] granting . . . a motion to dismiss, we take the following factual background directly from the complaint and accept as true all facts set forth therein, drawing all reasonable inferences from such allegations in favor of the Appellant[s]." Fair Hous. Rights Ctr. in Se. Pa. v. Post Goldtex GP, LLC, 823 F.3d 209, 212 (3d Cir. 2016).

incidence of near or actual collisions with pedestrians during left-hand turns. Counts eleven through fifteen allege that the SEPTA Defendants placed the bus into service on the day of the accident, with "conscious disregard of," Am. Compl. ¶ 261, and "deliberate indifference" to, see, e.g., Am. Compl. ¶¶ 266, 272, 275, 278, 281, 284, 287, a "substantial and unjustifiable risk that pedestrian-bus collisions would occur during left hand turning maneuvers at intersections," Am. Compl ¶ 261, and seek relief under 42 U.S.C. § 1983 for violation of their substantive due process rights.

The SEPTA Defendants removed the case to the United States District Court for the Eastern District of Pennsylvania, and moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court dismissed the federal claims against the SEPTA Defendants, declined to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(c), and remanded the action to state court.[2] Plaintiffs appeal.

## II[3]

### A

---

[2] The District Court also ruled on other claims involving the other Defendants, but those rulings are not before us.

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. Our Court has jurisdiction to review a district court's order dismissing the federal claims and remanding remaining state law claims to state court. 28 U.S.C. at § 1291; see, e.g., Hudson United Bank v. LiTenda Mortg. Corp., 142 F.3d 151, 155 (3d Cir. 1998) (confirming appellate jurisdiction to review order dismissing federal claims against one defendant and remanding remaining claims against second defendant to state court).

Our review is plenary. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011) (citation omitted). We must determine whether the complaint, construed "in the light most favorable to the plaintiff," Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014) (internal quotation marks and citation omitted), "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), "but we disregard rote

While states generally do not have an obligation to protect citizens, under the state-created danger doctrine, a public actor may be liable for harm a citizen suffers if "the state acts to create or enhance a danger that deprives the plaintiff of his" due process rights.  Sanford v. Stiles, 456 F.3d 298, 304 (3d Cir. 2006) (emphasis omitted).  Such a due process claim requires proof of four elements:

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) (citations, internal quotation marks, and footnotes omitted).

The fourth of these conjunctive elements reflects the fact that the substantive component of the Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.  It forbids the

---

recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements," James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012) (citation omitted).  A claim "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014) (internal quotation marks omitted).

4

State itself to deprive individuals of life, liberty, or property without due process of law . . . ." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 126 (1992) (quoting DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989)). "[A] specific and deliberate exercise of state authority . . . is not sufficient." Kaucher v. County of Bucks, 455 F.3d 418, 432 (3d Cir. 2006). Rather, "[t]here must be a direct causal relationship between the affirmative act of the state and plaintiff's harm. Only then will the affirmative act render the plaintiff 'more vulnerable to danger than had the state not acted at all.'" Id. (quoting Bright, 443 F.3d at 281). In other words, the state's affirmative act must be the "but for cause" of the plaintiff's harm. Id.

Plaintiffs argue that "[b]y choosing to place the transit bus into service on [the date of the accident], the SEPTA defendants [(1)] exposed the [P]laintiff's decedent and [P]laintiff K.W. to a danger they would not have otherwise encountered . . . [and (2)] made the [Plaintiffs] more vulnerable to injury by increasing the risk that they would be harmed as a result of a left-hand turn pedestrian bus collision." Appellants' Br. at 28. Like the claims at issue in Kaucher, the ones here are essentially contentions that "defendants failed to act affirmatively to improve" pedestrian safety. 455 F.3d at 433. In Kaucher, we rejected a corrections officer's claim that the defendants' affirmative acts caused him to contract an infection while working at a jail. Id. We observed that "[t]here had always been cases of staph infections at the jail," and determined that Kaucher had alleged no specific affirmative action creating the danger or increasing the plaintiff's susceptibility to it. Id. at 434-35.

5

As in Kaucher, the SEPTA Defendants' failure to remediate an allegedly known risk does not constitute an affirmative act that satisfies the fourth element of a state-created danger claim. See Searles v. Se. Pa. Transp. Auth., 990 F.2d 789, 793 (3d Cir. 1993) (rejecting state-created danger claim asserting that SEPTA's failure to maintain railcars in a safe operating condition is an "affirmative act"); see also Collins, 503 U.S. at 119 (suggesting "deliberate indifference to the safety of pedestrians that resulted in a fatal injury to one who inadvertently stepped into an open manhole" would not sufficiently allege state-created danger).

Plaintiffs' argument that the SEPTA Defendants changed the "status quo of the environment" by putting the bus into service on the day of the accident is also unavailing. Appellants' Br. at 25-28. In L.R. v. School District of Philadelphia, we explained that

> we find it useful to first evaluate the setting or the "status quo" of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo. This approach, which is not a new rule or concept but rather a way to think about how to determine whether this element has been satisfied, helps to clarify whether the state actor's conduct "created a danger" or "rendered the citizen more vulnerable to danger than had the state not acted at all."

836 F.3d 235, 243 (3d Cir. 2016) (quoting Bright, 443 F.3d at 281). There, we held that a teacher who allowed a child to leave his classroom with an unidentified adult who thereafter sexually abused the child had affirmatively misused his authority because the child was safe in the classroom (a "closely supervised" and "restricted" environment) "unless and until [the teacher] permitted [the child] to leave." Id.

6

Plaintiffs' claim that "the status quo . . . is the placement of safe vehicles into operation," Appellants' Br. at 27, misconstrues the "status quo" approach. According to the Amended Complaint, the status quo here was the use of buses with a particular mirror configuration allegedly known to obstruct the driver's view. Since as early as 2003, there have been several instances of left-turning SEPTA buses striking pedestrians in crosswalks, various driver reports and union grievances about the "dangerous vision obstruction" caused by the mirror configuration, Am. Compl. ¶¶ 80, 82-83, internal memoranda and communications on visual obstruction from the mirror configuration, and various news reports and public testimony on the problem. Before the accident, SEPTA took steps to respond to the problem, including alerting drivers to the obstruction issues, training them to lean forward in their seats to gain a better sight angle to minimize the obstruction, and revising SEPTA directives relating to pedestrian hazards. Thus, according to the Amended Complaint, the status quo was using buses with the particular mirror system that were driven by drivers trained to operate the bus in a way to address the problem the system allegedly posed. Placing the bus into service on the date of the accident did not alter the status quo. Compare L.R., 836 F.3d at 243 (describing the "typical" classroom and emphasizing absence of dangers within the classroom); with DeShaney, 489 U.S. at 201 ("[w]hile the State may have been aware of the dangers that [the child of whom it had temporarily taken custody] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them . . . . [W]hen it returned him to his father's custody, it placed him in no worse position

than that in which he would have been had it not acted at all").[4]  Accordingly, Plaintiffs

have not alleged an affirmative misuse of state authority.

Because Plaintiffs failed to satisfy one of the four conjunctive elements, the

District Court properly dismissed their state-created danger claim.  See Phillips v. County

of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (stating that plaintiff's failure to plead the

fourth element "obviates the need to analyze the other three elements"); Sanford, 456

F.3d at 311 (noting that plaintiff's "claim can go no further" because she failed to plead

the second element).

B

Plaintiffs' Monell and supervisory liability claims also fail.  Both of these claims

require a predicate constitutional violation.  See Monell v. Dep't of Soc. Servs. of City of

New York, 436 U.S. 658, 694 (1978) (explaining that municipal liability under § 1983

must be based on the "execution of a government's policy or custom" that results in a

constitutional violation); Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir.

2010) (explaining that supervisor liability requires a constitutional violation).  Because

Plaintiffs have not alleged a constitutional violation, the District Court correctly

dismissed their Monell and supervisory liability claims.

---

[4] See Kneipp v. Tedder, 95 F.3d 1199, 1209 (3d Cir. 1996) (explaining that "but for the intervention of the police, [husband] would have continued to escort his wife back to their apartment where she would have been safe" and therefore the state's intervention—sending her home unescorted in a seriously intoxicated state in cold weather—"made [her] more vulnerable to harm"); see also Jones v. Reynolds, 438 F.3d 685, 693 (6th Cir. 2006) ("[T]he act of returning someone to the same dangers that existed status quo ante does not satisfy the state-action requirement." (quotation marks and citation omitted)).

8

## III

For all these reasons, we will affirm the District Court's order dismissing counts eleven through sixteen.