NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1799
_____

CARMENCITA MARIA PEDRO,
                                        Appellant

v.

CITY FITNESS, LLC; KENNETH DAVIES, Personally and in His Professional
Capacity; CARL GEIGER, Personally and in His Professional Capacity;
STEPHANIE HICKS, Personally and in Her Professional Capacity; JEFF QUINN,
Personally and in His Professional Capacity; KATHRYN BLESSINGTON, Personally
and in Her Professional Capacity and Bombay Yoga Company; RUBEN DIAZ,
Personally and in His Professional Capacity; EVIN FORD, Personally and in His
Professional Capacity; JANET HARRIS-FORD, Personally and in Her Professional
Capacity; GAIL KOTEL, Personally and in Her Professional Capacity;
KRISTINA SYMBULA, Personally and in Her Professional Capacity;
HARRISON TREEGOOB, Personally and in His Professional Capacity;
ANNE ROGERS; STEPHANIE STOYER; EDITA ZLATIC-STUCKEY;
MAXWELL STUCKEY; 1148 WHARTON STREET FITNESS, LLC; 400 WALNUT
STREET FITNESS, LLC, Any/All Other Affiliated Entities Doing Business as City
Fitness Philadelphia; FIT PERX, LLC; CITY FITNESS MANAGEMENT, INC.;
C. RICHARD HORROW, ESQUIRE, Personally and in His Professional Capacity;
MARIE HILFERTY, Personally and in Her Professional Capacity; 2101 SOUTH
STREET FITNESS, LLC; BOMBAY YOGA COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:15-cv-04964)
District Judge:  Honorable Joel H. Slomsky
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 14, 2020

Before: KRAUSE, MATEY, and COWEN, Circuit Judges

OPINION[*]
_____

PER CURIAM

Carmencita Maria Pedro appeals pro se from the District Court's March 30, 2018 order dismissing her civil action pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, we will affirm that decision in part, vacate it in part, and remand for further proceedings.

I.[1]

Pedro describes herself as "dark-skinned and of Puerto Rican ancestry." (Second Am. Compl. 2.) In August 2010, Philadelphia-based City Fitness hired her to serve as a group exercise instructor at its 200 Spring Garden Street location ("the Spring Garden Club"). When City Fitness opened a club at 2101 South Street ("the South Street Club") in January 2012, Pedro asked to teach classes there.[2] Carl Geiger, who is City Fitness's

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Pedro's 145-page second amended complaint is the operative pleading in this case. Because this is an appeal from an order granting motions to dismiss under Rule 12(b)(6), "we take the following factual background directly from [that operative pleading] and accept as true all facts set forth therein, drawing all reasonable inferences from such allegations in favor of the Appellant." Fair Hous. Rights Ctr. in Se. Pa. v. Post Goldtex GP, LLC, 823 F.3d 209, 212 (3d Cir. 2016).

[2] City Fitness "operates under multiple affiliated entities." (Second Am. Compl. 3.) The

managing partner, denied her request, stating, "[y]ou know, the demographic in that neighborhood is very white-bred and I just don't think you would fit in." (Id. at 18 (emphasis omitted).) However, in June 2012, Deanna Santiago, who was City Fitness's group exercise manager, asked Pedro to serve as a substitute teacher for classes at the South Street Club. Shortly thereafter, Santiago resigned from her position. In August 2012, Geiger filled that position by hiring Pedro.

Pedro's duties as the group exercise manager included, inter alia, teaching classes. Beginning in September 2012, she taught the "Silver Sneakers" class at the South Street Club, earning $25 per class. But during a meeting on October 1, 2013, Geiger told her, "I have decided to assign another [i]nstructor to teach the Silver[]Sneakers class . . . because the demographic is more white." (Id. at 28 (emphasis omitted).) Geiger explained that Pedro could continue teaching that class until he found a "suitable replacement." (Id. (emphasis omitted).) He also told her that she could continue teaching at the Spring Garden Club because "[t]here are more black people over there, so you fit in better [there]." (Id. (emphasis omitted).) Pedro objected, and when she started crying, Geiger laughed at her. On October 29, 2013, she taught her last Silver Sneakers class at the South Street Club. Thereafter, the class was taught by a white instructor.

On November 6, 2013, Geiger told Pedro that Jeff Quinn (City Fitness's vice president) "wants me to fire you because you're black . . . and hire a white manager."

Spring Garden Club is operated by City Fitness, LLC, while the South Street Club is operated by 2101 South Street Fitness, LLC.

3

(Id. at 44 (emphasis omitted).)  Later that month, City Fitness received several written complaints about Pedro from certain club members and group exercise instructors.  Two of those complaints were made by club member Edita Zlatic-Stuckey.  Zlatic-Stuckey's first complaint stated that, during a yoga class, Pedro "picked on" her, used an "aggressive tone," and was "[e]xtremely unprofessional and condescending."  (Ex. to Mot. to Dismiss, located at Dist. Ct. docket # 60-3, at 6.)[3]  Zlatic-Stuckey filed her second complaint six days later, stating that, the night after filing her first complaint, Pedro "ambushed my husband and [me] at the Whole Food[s] store trying to resolve the issue in the middle of the store."  (Id. at 8.)  The second complaint expressed Zlatic-Stuckey's "concern[] that [Pedro] is one of the managers reading this form[] and stalking us in public."  (Id.)

On December 10, 2013, Geiger told Pedro by phone that he would be removing her from the group-exercise-manager position and reducing her teaching workload to two classes per week.  In support of this decision, Geiger said,

> [r]emember when you first asked me about teaching on South Street after the club opened I told you I didn't think you'd fit in because the neighborhood is very white-bred, well Carmencita it's just not working out.  You are always late to all of your classes, I have the members complaining that you are being disrespectful to them in yoga and accosting and stalking them in Whole Foods Market.  []I'm moving City

---

[3] "[W]e may consider documents integral to or explicitly referred to in the [plaintiff's pleading] without turning a motion to dismiss into a motion for summary judgment."  In re Lipitor Antitrust Litig., 868 F.3d 231, 249 (3d Cir. 2017) (internal quotation marks omitted).

4

Fitness in a different direction and I'm seeking fresh, new blood and younger energy . . . .

(Second Am. Compl. 46 (emphasis omitted).)  When Pedro asked Geiger if he really believed that she would accost and stalk someone, he replied in the affirmative and said, "[y]ou're black and you were probably angry that she didn't like your class, so you saw her in the market and confronted her.  Now she's mad and threatening to cancel her membership if we don't do something about you."  (Id. at 47 (emphasis omitted).)

Pedro objected to her demotion.  Thereafter, on December 16, 2013, she lodged a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and then informed Geiger, Quinn, and others via email that she had done so. Later that day, Geiger fired her, and a white woman was subsequently hired to fill Pedro's group-exercise-manager role.

After obtaining a right-to-sue notice from the EEOC,[4] Pedro commenced this action.  Her sweeping second amended complaint, which was brought against City Fitness, Geiger, Quinn, and a host of other entities and individuals, raised numerous claims under various federal and state statutes.  The defendants moved to dismiss that pleading under Rule 12(b)(6).  On March 30, 2018, the District Court granted those motions and directed the District Court Clerk to close the case.  This timely appeal followed.

---

[4] It appears that the EEOC took no action on Pedro's claim.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we exercise de novo review over the District Court's Rule 12(b)(6) dismissal. See Estate of Roman v. City of Newark, 914 F.3d 789, 795 (3d Cir. 2019). "When conducting our review, we accept all factual allegations as true [and] construe the [operative pleading] in the light most favorable to the plaintiff." Id. (first alteration in original) (internal quotation marks omitted). "To survive dismissal [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Wisniewski v. Fisher, 857 F.3d 152, 155 (3d Cir. 2017) (internal quotation marks omitted). "*[P]lausible* does not mean *probable*," and "we ask only if we have enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of each element." United States ex rel. Bookwalter v. UPMC, No. 18-1693, --- F.3d ----, 2019 WL 7019394, at *3 (3d Cir. Dec. 20, 2019) (precedential) (second alteration in original) (internal quotation marks omitted).

We begin with Pedro's claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964.[5] The District Court evaluated these claims by applying the

---

[5] Pedro also alleged discrimination and retaliation in violation of 42 U.S.C. § 1981 and the Pennsylvania Human Relations Act ("PHRA"), both of which are analyzed under the same standard as Title VII claims. See Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (comparing Title VII and § 1981 claims); Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000) (comparing Title VII and PHRA claims). As for her claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), those claims were properly dismissed because she did not allege facts demonstrating that she has a plausible claim under that statute. Although Geiger allegedly told Pedro that he

burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), the first step of which requires determining whether the plaintiff has made a prima facie showing of discrimination and/or retaliation. <u>See</u> <u>Jones v. Se. Pa. Transp. Auth.</u>, 796 F.3d 323, 325-26 (3d Cir. 2015). But "[a] *prima facie* case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim [under Rule 12(b)(6)]." <u>Connelly v. Lane Constr. Corp.</u>, 809 F.3d 780, 789 (3d Cir. 2016) (internal quotation marks and citation omitted). Again, the proper question to ask at the Rule 12(b)(6) stage is simply whether the plaintiff's pleading has alleged enough facts to "raise a reasonable expectation that discovery will reveal evidence of each element." <u>Bookwalter</u>, 2019 WL 7019394, at *3 (internal quotation marks omitted).

Here, Pedro has alleged facts indicating that Geiger stripped her of her role teaching the Silver Sneakers class at the South Street Club because of the color of her skin. Geiger then told Pedro that Quinn wanted to fire her for that same reason. When Geiger subsequently demoted her, he made remarks that might lead one to infer that the

---

was seeking "younger energy," she alleges that her successor for the group-exercise-manager position was actually *older* than her, and that some of the instructors who took over her classes were older than her, too. <u>See</u> <u>Potence v. Hazleton Area Sch. Dist.</u>, 357 F.3d 366, 370 (3d Cir. 2004) (explaining that a plaintiff seeking relief under the ADEA must demonstrate, inter alia, that "her replacement was sufficiently *younger* to permit a reasonable inference of age discrimination" (emphasis added)). Finally, to the extent that Pedro sought relief under 42 U.S.C. § 1981a, we note that this statute does not create a freestanding cause of action; rather, it merely adds to the remedies available to a Title VII plaintiff. <u>See, e.g.</u>, <u>Huckabay v. Moore</u>, 142 F.3d 233, 241 (5th Cir. 1998), <u>overruled on other grounds by</u> <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002).

7

color of her skin played a role in that decision, too. And Geiger fired her only hours after she told him that she had lodged a charge of discrimination with the EEOC.[6] We conclude that these alleged facts are enough to state claims for discrimination and retaliation. See Connelly, 809 F.3d at 787-91. Accordingly, we will vacate the District Court's dismissal of Pedro's discrimination and retaliation claims, with the following qualifications. To the extent that Pedro seeks relief under Title VII, her claims are reinstated against City Fitness (i.e., City Fitness, LLC, and 2101 South Street Fitness, LLC, see supra note 2) only.[7] To the extent that she seeks relief under the PHRA, her claims are reinstated against City Fitness, LLC, 2101 South Street Fitness, LLC, and Geiger only.[8] Lastly, to the extent that she seeks relief under § 1981, her claims are

---

[6] The District Court determined that Pedro could not show that her termination on December 16, 2013, was the product of retaliation because she did not actually file her discrimination claim with the EEOC until December *19*, 2013. We disagree. The letter that Pedro submitted to the EEOC raising her discrimination claim is dated December 16, 2013, and it appears that it was submitted to the EEOC via mail. (See Ex. to Mot. to Dismiss, located at Dist. Ct. docket # 60-3, at 21.) That is consistent with Pedro's allegations that she submitted her EEOC claim on December 16 and then notified Geiger and others via email later that day. Although the EEOC may not have received Pedro's letter until December 19, that does not prevent her from showing retaliation.

[7] For the reasons explained by the District Court, Pedro cannot state a claim for relief under Title VII against the remaining defendants. (See Dist. Ct. Mem. entered March 30, 2018, at 12, 15-17.)

[8] For the reasons explained by the District Court, Pedro cannot state a claim for relief under the PHRA against the remaining defendants. (See Dist. Ct. Mem. entered March 30, 2018, at 12, 15-19.)

reinstated against City Fitness, LLC, 2101 South Street Fitness, LLC, Geiger, and Quinn only.[9]

We now turn to the remaining claims included in Pedro's second amended complaint. Her claims for "wrongful demotion" and "wrongful termination," which are set forth in Count IV, are duplicative of her discrimination and retaliation claims.[10] Accordingly, there is no need for us to vacate the dismissal of Count IV. The rest of Pedro's claims concern a wide variety of issues, including, inter alia, an alleged violation of the Employee Retirement Income Security Act of 1974 and allegations of unequal pay, defamation, and tortious interference with business relationships. Each of these claims (1) has been forfeited based on Pedro's failure to raise it in her 36-page opening brief, see Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 145-46 (3d Cir.

---

[9] If directors, officers, and/or employees "are personally involved in the discrimination against the [plaintiff], and if they intentionally caused the [employer] to infringe on [the plaintiff's] Section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable [under § 1981]." Al-Khazraji v. Saint Francis Coll., 784 F.2d 505, 518 (3d Cir. 1986). We conclude that Pedro has alleged enough facts to support a plausible § 1981 claim against Geiger and Quinn, but not as to the remaining individuals who are named as defendants. As for the entities that are named as defendants, we agree with the District Court that Pedro cannot proceed against any of them other than City Fitness, LLC, and 2101 South Street Fitness, LLC. (See Dist. Ct. Mem. entered March 30, 2018, at 12, 15-16.)

[10] Count IV alleges discrimination and retaliation, and it relies on the same statutes that underlie Pedro's aforementioned discrimination and retaliation claims.

2017),[11] and/or (2) was properly dismissed under Rule 12(b)(6) for substantially the reasons provided by the District Court.

In light of the above, we will (1) vacate the District Court's dismissal of Pedro's discrimination and retaliation claims to the extent delineated above, (2) affirm the remainder of the District Court's March 30, 2018 dismissal order,[12] and (3) remand this case to the District Court for further proceedings.[13]

---

[11] To the extent that Pedro's reply brief seeks permission to file supplemental briefing addressing issues that were not addressed in her opening brief, that request is denied. See Barna, 877 F.3d at 147 ("Because of the important interests underlying the preservation doctrine, we will not reach a forfeited issue in civil cases absent truly exceptional circumstances." (internal quotation marks omitted)).

[12] In reaching this result, we have carefully considered each of the various arguments that Pedro has preserved on appeal, some of which are, at best, ancillary to the District Court's motion-to-dismiss analysis. To the extent that Pedro challenges any District Court orders other than its March 30, 2018 dismissal, we see no reason to disturb any such orders.

[13] The Honorable Joel H. Slomsky has presided over the District Court proceedings in this case. On appeal, Pedro takes issue with Judge Slomsky's handling of the case, alleging, inter alia, that he is not "trustworthy," is biased against her, and has "aided and abetted" "fraudulent activities" committed by the appellees' attorneys. We find no merit to these allegations, and we see no reason for this case to be reassigned to a different district judge on remand.