RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0357p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DERRICK GRANT,

*Defendant-Appellant*.

⎤
⎟
⎟
⎟ No. 19-3824
⎟
⎟
⎦

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 4:16-cr-00332—Christopher A. Boyko, District Judge.

Argued: November 10, 2020

Decided and Filed: November 12, 2020

Before: SUTTON, THAPAR, and READLER, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Anna M. Greve, TAFT STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellant. Rebecca C. Lutzko, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Anna M. Greve, TAFT STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellant. Elizabeth M. Crook, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

CHAD A. READLER, Circuit Judge. Federal prisoner Derrick Grant punched a prison guard while awaiting sentencing for an armed robbery conviction. He was charged with (and later pleaded guilty to) violating 18 U.S.C. § 111, which criminalizes assaulting federal officers

and those who assist them. Challenging that conviction today, Grant contends that § 111 does not apply where, as here, the assault victim was a private contractor, not a federal employee, and, at the time of the assault, the contractor was not assisting a federal employee. As even Grant acknowledges, however, we do not write on a clean slate in resolving this appeal. We have previously held that § 111 encompasses circumstances like this one, where a private employee performs the same federal duties a federal employee would otherwise fulfill. Accordingly, we affirm the district court's judgment.

I.

A jury in the Western District of Pennsylvania convicted Derrick Grant of armed bank robbery. Because the Western District of Pennsylvania does not have a federal holding facility, Grant was detained at the Northeast Ohio Correctional Center (NEOCC) while awaiting sentencing. NEOCC, a privately owned and operated prison, contracts with the United States Marshals Service to house federal detainees before trial and/or sentencing.

A week before his sentencing hearing, Grant resolved to punch "the next officer he saw." And he did just that. When a NEOCC correctional officer tried to move Grant to a different cell, he walked up to her and punched her in the face, causing bruising on her neck and jaw. Grant was arrested, detained, and charged with assaulting a designated person, in violation of 18 U.S.C. § 111(a)(1). Together with 18 U.S.C. § 1114, these statutes criminalize assaulting "any officer or employee of the United States or of any agency in any branch in the United States Government . . . or any person assisting such an officer or employee in the performance of such duties." 18 U.S.C. § 1114.

At his probable cause hearing, Grant challenged his detention on the ground that the NEOCC officer, as a private contractor, was not a designated person as that term is used in § 111. In other words, Grant argued, his conduct did not amount to a federal offense. In response, Deputy U.S. Marshal Daniel Deville testified that the correctional officer assaulted by Grant was an agent of the federal government. She worked for the Marshals Service pursuant to a contract between NEOCC and the Marshals, and at the time she was assaulted, she was assisting DeVille by detaining Grant prior to sentencing. On that basis, the magistrate judge

concluded there was probable cause to support the § 111 charge.  A grand jury later indicted Grant on the same charge.  Following a delay to resolve competency issues, Grant ultimately pleaded guilty and was sentenced to 40 months imprisonment, imposed consecutive to his robbery sentence.  He now appeals that conviction and sentence.

## II.

At the outset, the parties debate the proper standard of review.  The government believes we should employ plain error review because Grant forfeited his statutory challenge by pleading guilty without objecting to the indictment.  *See United States v. Olano*, 507 U.S. 725, 732–34 (1993); *United States v. Harris*, 790 F. App'x 673, 675 (6th Cir. 2019).  Grant, on the other hand, says he preserved the issue by objecting at his probable cause hearing, meaning our customary de novo standard applies.  *See United States v. Moore*, 567 F.3d 187, 190 (6th Cir. 2009).  We need not resolve that dispute, however, as the government prevails even under the traditional de novo standard.

## III.

1. Grant's statute of conviction is twofold.  Section 111 criminalizes assaulting "any person designated in section 1114 . . . while engaged in or on account of the performance of official duties."  18 U.S.C. § 111.  Section 1114 in turn instructs that "any person" includes "any officer or employee of the United States or of any agency in any branch in the United States Government . . . or any person assisting such an officer or employee in the performance of such duties."  18 U.S.C. § 1114.  Emphasizing a literal reading of § 1114's text, Grant asserts that the private prison guard he assaulted was under contract with—and was therefore "assisting"—a federal agency, the United States Marshals Service, but not a specific officer or employee.  As a result, Grant says, the private contractor is not a "person" as that term is used in § 111.

Grant's argument, however, is foreclosed by our recent decision in *United States v. Bedford*, 914 F.3d 422 (6th Cir.), *cert. denied*, 139 S. Ct. 1366 (2019).  We held in *Bedford* that a contract carrier delivering mail on behalf of the United States Postal Service was a "person designated" under § 1114.  *Id.* at 425.  Section 1114's statutory text, we explained, is "unambiguous, coherent, and consistent with the broader statutory scheme," and

encompasses one who "give[s] support or aid" to an officer or employee of the United States. *Id.* at 427–28. Because the mail carrier, in accordance with the terms of a contract with the Postal Service, was "help[ing] carry out[] the duties or tasks of the federal superior," he was assisting the Postal Service within the meaning of § 1114, making him a "designated" person protected under § 111. *Id.* at 428. And the holding in *Bedford*, we recently explained, is not limited to instances where the "designated" person worked under a contract with a federal agency. *See United States v. Scurry*, --- F. App'x ----, No. 19-4038, 2020 WL 6498675, at *5 (6th Cir. Nov. 5, 2020). In *Scurry,* we read *Bedford*'s application of §§ 111(a)(1) and 1114 to prohibit assaulting a local police officer assisting the federal Bureau of Alcohol, Tobacco, and Firearms in executing an arrest warrant even when the local officer was not under contract with the ATF. *Id.*

*Bedford*'s reading of § 1114 fairly encompasses today's case. Grant's victim was a private prison guard supervising the housing of federal inmates according to a contract with the Marshals Service. If not the victim, a federal employee would have been carrying out those same duties. In that way, the victim was a "person assisting . . . an officer or employee [of the United States] in the performance of [official duties]," making the assault committed upon her a violation of § 111.

We are not alone in reaching this conclusion. Every one of our sister circuits to consider the issue has read § 1114 to encompass private contractors performing similar federal security functions. *See, e.g.*, *United States v. Luedtke*, 771 F.3d 453, 455 (8th Cir. 2014) (finding that a state guard who supervised federal inmates housed in a county jail pursuant to a contract with the Marshals Service is a covered person because he was "serving precisely the same federal interest that a marshal would serve while maintaining custody of a federal prisoner" (citation omitted)); *United States v. Ama*, 97 F. App'x 900, 902 (10th Cir. 2004) (same); *United States v. Jacquez–Beltran*, 326 F.3d 661, 662–63 (5th Cir.), *cert. denied*, 540 U.S. 922 (2003) (same); *United States v. Murphy*, 35 F.3d 143, 147 (4th Cir. 1994) (same).

2. Grant sees things differently. He argues that § 1114 applies only to a private individual assisting a *particular* "officer or employee," and not one who instead assists an "agency" at large. Citing dictionary definitions reflecting a semantic difference between an

individual employee and an agency, Grant reads § 1114 to cover those who assist the former, but not those who, like the guard victimized here, assist entire agencies through a general contracting relationship. Further, says Grant, because *Bedford* did not grapple with this dichotomy, its holding does not bind us today.

When interpreting a statute, we customarily consider the meaning an ordinary reader would give the statute's text. *See, e.g.*, *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019). That is not the same as mechanistically parsing down each word of the statute to its dictionary definition, no matter the resulting reading that would give the law. *See United States v. Miller*, 734 F.3d 530, 540 (6th Cir. 2013); Amy Coney Barrett, *Assorted Canards of Contemporary Legal Analysis: Redux*, 70 Case W. Res. L. Rev. 855, 859 (2020) ("[T]extualism isn't a mechanical exercise, but rather one involving a sophisticated understanding of language as it's actually used in context."); Antonin S. Scalia, *A Matter of Interpretation* 23 ("A text should not be construed strictly, and it should not be construed leniently; it should be construed reasonably, to contain all that it fairly means."). Consider how that distinction plays out here. Read in isolation, assisting "any officer or employee" could have a different literal meaning than assisting "any agency," with the latter a collective body. But isolating those statements in the way Grant does strips the statutory text of its context, creating an interpretation at odds with the statute's plain meaning. *See* John Manning, *What Divides Textualists from Purposivists?*, 106 Colum. L. Rev. 70, 79–80 (2006) ("[O]ne can make sense of others' communications only by placing them in their appropriate social and linguistic context"). An ordinary reader (as we consider ourselves to be) of § 1114 would understand the law as protecting federal contractors who assist federal officers without drawing a distinction between assisting an agency or an individual employee of the agency. Nor, to our mind, does that distinction make much sense in this setting. After all, because an agency ultimately acts through individuals, whether it be the agency head or a rank-and-file employee, assisting one is ordinarily the same as assisting the other. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnmental bodies can act only through natural persons . . . .").

Grant, to his credit, makes a vigorous argument as to why *Bedford* was wrongly decided. But we have no license to overturn a prior panel's reasoned decision. *See Manners v.*

*United States*, 947 F.3d 377, 382 (6th Cir. 2020) (citing *Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)).  Nor are we inclined to do so, for the reasons just explained. We acknowledge Grant's concern that *Bedford* and cases like it risk some expansion of federal law to criminalize conduct historically regulated at the state and local level.  *See Jacquez-Beltran*, 326 F.3d at 661 (DeMoss, J., concurring) (lamenting this reading of § 1114 as "[r]egretfully . . . further[ing] the cause of federalization of criminal law").  That concern, as with the more general unease regarding the over-federalization of criminal conduct, is not without merit.  *See Gamble v. United States*, 139 S. Ct. 1960, 2008 (2019) (Gorsuch, J., dissenting) (citing Edwin Meese, *Big Brother on the Beat: The Expanding Federalization of Crime*, 1 Texas L. Rev. L. & Pol'y 1, 22 (1997)).  With some notable exceptions, however, the scope of federal law is Congress's decision to make.  As to the statutes Grant violated in particular, perhaps a future case will involve conduct so ancillary to a federal function or the "performance of official duties" that we decide the case is not controlled by *Bedford*.  But that does not describe today's case, and we thus see no reason to deviate from the course we previously charted.

We affirm.