RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0232p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JAMES MATTHEWS and JENNIFER BROWNFIELD CLARK, individually and on behalf of all others similarly situated; JOANNE ROSS, parent and natural guardian of Estate of A.R., a deceased minor, and individually and on behalf of all others similarly situated,

> *Plaintiffs-Appellants*,

*v.*

CENTRUS ENERGY CORP.; UNITED STATES ENRICHMENT CORPORATION; URANIUM DISPOSITION SERVICES, LLC; BWXT CONVERSION SERVICES, LLC; MID-AMERICA CONVERSION SERVICES, LLC; BECHTEL JACOBS COMPANY, LLC; LATA/PARALLAX PORTSMOUTH, LLC; FLUOR-BWXT PORTSMOUTh, LLC,

> *Defendants-Appellees*.

No. 20-3885

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:20-cv-00040—Algenon L. Marbley, Chief District Judge.

Decided and Filed:  October 6, 2021

Before:  STRANCH, BUSH, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Kelsey J. Reno, VILLARREAL LAW FIRM, LLC, Chillicothe, Ohio, for Appellants.  Richard D. Schuster, VORYS, SATER, SEYMOUR AND PEASE, LLP, Columbus, Ohio, Jacob D. Mahle, Jessica K. Baverman, VORYS, SATER, SEYMOUR AND PEASE, LLP, Cincinnati, Ohio, for Appellees.

---

**OPINION**

---

CHAD A. READLER, Circuit Judge.   Plaintiffs believe they have been exposed to radioactive material released by a nuclear plant in Ohio.  In an attempt to recover for harms that exposure allegedly caused, they asserted state law claims in state court against entities involved in the plant's operations.  The entities in turn removed the action to federal court and then argued that the Price-Anderson Act, which governs "any public liability action arising out of or resulting from a nuclear incident," 42 U.S.C. § 2210(n)(2), preempts plaintiffs' claims.  The district court agreed and, because plaintiffs disavowed any theory of recovery under the Act, dismissed the case.  We now affirm.

**BACKGROUND**

**A.**  To help frame the issues before us, we begin with a review of the federal regulatory scheme governing American nuclear power production.  In the early years of our nation's exploration into nuclear power, the federal government enjoyed a monopoly on nuclear power production.  *See* Atomic Energy Act of 1946, Pub. L. No. 79-585, 60 Stat. 755; *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 206 (1983).  Through the passage of the Atomic Energy Act of 1954, Congress ended that monopoly and "provid[ed] for licensing of private construction, ownership, and operation of commercial nuclear power reactors for energy production."  *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 63 (1978); *see also* Atomic Energy Act of 1954, Pub. L. No. 83-703, 68 Stat. 919.  As the nuclear power industry was subjected to market forces, "profits from the private exploitation of atomic energy were uncertain and the accompanying risks substantial."  *Duke Power Co.*, 438 U.S. at 63.  These developments resulted in the adoption of the Price-Anderson Act in 1957.  *See El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 476 (1999); *see also* Pub. L. No. 85-256, 71 Stat. 576 (1957).  Through the Act, Congress created a system of private insurance, government indemnification, and limited liability for federal licensees.  *See* 71 Stat. at 576–79.  The stated rationale behind those safeguards was "to protect the public" while still "encourag[ing] the development of the atomic energy industry."  42 U.S.C. § 2012(i).  In practice, they operated to

spread potential liability among private insurance, the federal government, and licensees. *See Duke Power Co*, 438 U.S. at 64–67.

Congress later amended the Act on multiple occasions. Among those legislative efforts was a 1966 amendment that required indemnified licensees to waive various common-law defenses in actions arising from an "extraordinary nuclear occurrence." *See* Pub. L. No. 89-645, § 3, 80 Stat. 891, 892 (1966); *In re TMI Litig. Cases Consol. II (TMI II)*, 940 F.2d 832, 852 (3d Cir. 1991); *see also* 42 U.S.C. § 2014(j) (defining "extraordinary nuclear occurrence" as "any event causing a discharge or dispersal of source, special nuclear, or byproduct material from its intended place of confinement in amounts offsite, or causing radiation levels offsite, which the Nuclear Regulatory Commission or the Secretary of Energy . . . determines to be substantial, and which the [Commission or Secretary] . . . determines has resulted or will probably result in substantial damages to persons offsite or property offsite"). Congress also added a provision enabling the transfer to federal district court of all claims arising out of an extraordinary nuclear occurrence. *See* 80 Stat. at 892; *TMI II*, 940 F.2d at 852.

In 1988, Congress amended the Act again in response to the Three Mile Island accident and the wave of litigation it prompted. *See* Pub. L. No. 100-408, 102 Stat. 1066 (1988); *Neztsosie*, 526 U.S. at 477. Because the accident did not fit within the Act's definition of an "extraordinary nuclear occurrence," there was no mechanism to consolidate cases in federal court. *Neztsosie*, 526 U.S. at 477 (citing S. Rep. 100-218, at 13 (1987)). Congress therefore provided federal district courts with original and removal jurisdiction over not just "extraordinary nuclear occurrences" but also "any public liability action arising out of or resulting from a nuclear incident." *See* 42 U.S.C. § 2210(n)(2); *Neztsosie*, 526 U.S. at 477. To spell out the contours of that latter category of cases, the Act, as amended, defined "public liability" as "any legal liability arising out of or resulting from a nuclear incident." 42 U.S.C. § 2014(w). The term "nuclear incident," in turn, was defined as:

> any occurrence, including an extraordinary nuclear occurrence, within the United States causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material.

*Id.* § 2014(q). Finally, for purposes of jurisdiction over public liability actions, "any suit asserting public liability" would be "deemed to be an action arising under [42 U.S.C. §] 2210," with the "substantive rules for decision . . . derived" from state law, "unless such law is inconsistent" with § 2210. 42 U.S.C. § 2014(hh).

**B.** With the regulatory table set, we turn to the dispute before us, one centered in Pike County, located in Ohio's Appalachian region. Pike County is home to the Portsmouth Gaseous Diffusion Plant. The plant has a long history of nuclear power generation. From the early 1950s until 2001, the plant enriched uranium, initially to support the United States' nuclear-weapons program and later to fuel commercial nuclear reactors. Since 2002, the plant has been used as a facility to convert depleted uranium hexafluoride (a coproduct of uranium enrichment) into uranium oxide, a more stable compound that can be reused, stored, transported, or discarded. Until 2016, the plant also served as the site of operations for the American Centrifuge Lead Cascade Facility, which processed uranium in a closed loop to show the effectiveness of the centrifuge design and equipment.

Plaintiffs are four individuals who lived near the plant, one of whom is now deceased and is represented here by his estate. Defendants are entities that have been involved in various activities at the plant since 1993, including uranium enrichment, depleted uranium hexafluoride conversion, and environmental remediation. Plaintiffs claim that defendants have misleadingly portrayed the plant as safe when, in reality, it discharged radioactive material that caused (and continues to cause) them to suffer harm. Plaintiffs allege that their exposure to that radioactive material caused them bodily injuries (including death) as well as property losses. Plaintiffs also seek to represent a class of "[a]ll individuals and minor children who were exposed to the toxic and radioactive material expelled by the [plant]" and have allegedly suffered physical injury.

In 2019, plaintiffs filed suit in Ohio state court asserting seven claims under Ohio law. Defendants removed the case on the grounds that the complaint, although it did not assert a federal claim, nonetheless raised a federal question under the Price-Anderson Act. *See* 42 U.S.C. §§ 2014(hh), 2210(n)(2). Defendants then moved to dismiss the complaint, arguing that the Act preempted plaintiffs' state law claims and, because plaintiffs did not assert a claim under the Act, the complaint should be dismissed. Plaintiffs both opposed the motion and filed a motion to

remand, contending that their claims did not arise from a "nuclear incident" and thus fell outside the Act's scope.

The district court granted defendants' motion. Invoking our decision in *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1552–53 (6th Cir. 1997), the court concluded that "[p]laintiffs' state law claims fit squarely within" the Price-Anderson Act's definition of "nuclear incident," meaning the claims were preempted. And because plaintiffs did not otherwise opt "to proceed under the Price-Anderson Act," they failed to state a cognizable claim. The court also dismissed plaintiffs' motion to remand as moot. *See* 42 U.S.C. § 2210(n)(2).

## ANALYSIS

On appeal, plaintiffs challenge the district court's holdings that the Price-Anderson Act preempts their state law claims and that plaintiffs otherwise failed to state a claim on which relief could be granted. They also challenge the district court's denial of their motion to remand. We review each installment of that legal trilogy de novo. *Torres v. Precision Indus., Inc.*, 995 F.3d 485, 491 (6th Cir. 2021) (per curiam) (federal preemption); *Doe v. Mich. State Univ.*, 989 F.3d 418, 425 (6th Cir. 2021) (dismissal for failure to state a claim); *City of Cleveland v. Ameriquest Mortg. Secs., Inc.*, 615 F.3d 496, 501 (6th Cir. 2010) (denial of motion to remand).

**A.** As its name suggests, the Supremacy Clause of the United States Constitution instructs that federal law is "the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. This unequivocal command affords Congress the power to preempt state law. *See McDaniel v. Upsher-Smith Labs., Inc.*, 893 F.3d 941, 944 (6th Cir. 2018).

Congress sometimes exercises its power to preempt state law through an express preemption clause. *Torres*, 995 F.3d at 491. In that instance, Congress explicitly indicates in a statute's text that it is displacing or prohibiting the enactment of state legislation in a particular area. *See, e.g.*, 29 U.S.C. § 1144(a) (stating that the Employee Retirement Income Security Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described" in the Act).

Congress may also preempt state law implicitly. *Torres*, 995 F.3d at 491. Implicit preemption typically comes in one of two forms: field or conflict. *Id.* Field preemption occurs "where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (cleaned up). Conflict preemption, meanwhile, occurs "where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (cleaned up). While recognized as separate categories, these two forms of implied preemption are not "rigidly distinct." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 n.5 (1990) (explaining that "field pre-emption may be understood as a species of conflict pre-emption").

Generally, federal preemption is raised as an affirmative defense to a plaintiff's allegations. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In most instances, preemption cannot serve as the basis for removal of an action from state court, as federal question jurisdiction—the main hook for removal absent diversity jurisdiction—"exists only when a federal question is presented on the face of [a] plaintiff's properly pleaded complaint" (the so-called "well-pleaded complaint rule"), *id.*, ignoring any potential defenses, *Roddy v. Grand Trunk W. R.R.*, 395 F.3d 318, 322 (6th Cir. 2005). But defendants can avoid the well-pleaded complaint rule in two circumstances. *Id.* The first is where Congress expressly permits removal. *Id.*; *see, e.g.*, 15 U.S.C. § 77p(c) (allowing certain securities class actions to be removed to federal court). And the second is where the "pre-emptive force of a statute is so 'extraordinary,' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc.*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S 58, 65 (1987)). These latter enactments are said to completely preempt state law—a seemingly misleading classification given the jurisdictional nature of the doctrine, *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016)—and have the effect of "ensuring that the preemption question itself is decided in a federal (rather than a state) forum," *Cook v. Rockwell Int'l Corp. (Cook II)*, 790 F.3d 1088, 1097 (10th Cir. 2015) (Gorsuch, J.). The Supreme Court, however, has recognized complete preemption in just three statutory settings: the Labor Management Relations Act, 29 U.S.C. § 185, the Employee

Retirement Income Security Act, 29 U.S.C. § 1001 et seq., and the National Bank Act, 12 U.S.C. §§ 85, 86. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6–11 (2003); *Roddy*, 395 F.3d at 323.

**B.** At first blush, the Price-Anderson Act would seem to fit the mold of complete preemption, as it "deem[s]" any suit asserting "public liability arising out of or resulting from a nuclear incident" to be a federal action. 42 U.S.C. § 2014(w), (hh). But the Act also instructs that "the substantive rules for decision" in a public liability action are "derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of [§ 2210]." *Id.* § 2014(hh). By incorporating state law into the federal action, the Act does not entirely displace state law, making the Act unlike other instances of complete preemption. *See Neztsosie*, 526 U.S. at 484 & n.6 (noting the Act's "unusual preemption provision" and stopping short of recognizing the Act as completely preempting state law).

Even absent complete preemption, however, the Act still allows for removal and preempts state law claims. The Act expressly permits removal of "public liability actions," that is, any suit asserting liability "arising out of or resulting from a nuclear incident." 42 U.S.C. § 2210(n)(2); *see also id.* § 2014(hh). And as to preemption, as noted, the Act deems any public liability action to be a federal action, even if it is brought under state law in state court. *See id.* § 2014(w), (hh); *Neztsosie*, 526 U.S. at 484. In so doing, the Act leaves "no room" for state law causes of action arising from a nuclear incident. *See Gade*, 505 U.S. at 98 (citation omitted); *see also TMI II*, 940 F.2d at 854 ("After the Amendments Act [of 1988], no state cause of action based upon public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the . . . Act or *it is not compensable at all*."). The Act instead allows for a federal Price-Anderson claim, with state law providing the "substantive rules for decision" "unless such law is inconsistent" with 42 U.S.C. § 2210, which provides for indemnification and limitation of liability for federal licensees of nuclear power plants. *See* 42 U.S.C. § 2014(hh); *see also O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1100 (7th Cir. 1994) ("State law serves as the basis for the cause of action only as long as state law is consistent with the other parts of the Act.").

As a result, the Act, as we have previously recognized, preempts state law claims asserting public liability arising from a nuclear incident. *See Nieman*, 108 F.3d at 1552–53. Accordingly, for claims arising from a nuclear incident, a plaintiff "can sue under the Price-Anderson Act, as amended, or not at all." *Id.* at 1553. That is the rule, we note, both here and elsewhere. *See, e.g.*, *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011) ("[A] plaintiff who asserts any claim arising out of a 'nuclear incident' as defined in the [Price-Anderson Act] . . . 'can sue under the [Act] or not at all.'" (quoting *Nieman*, 108 F.3d at 1553)); *In re Berg Litig.*, 293 F.3d 1127, 1132 (9th Cir. 2002) (explaining that the Act "provide[s] the exclusive means for pursuing claims under" its provisions); *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 537 (2d Cir. 1999) (recognizing that the Act, as amended in 1988, created "an *exclusive* federal cause of action for radiation injury"); *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1306 (11th Cir. 1998) (per curiam) (describing the Act as "creating an exclusive federal cause of action for radiation injury"); *O'Conner*, 13 F.3d at 1099–1100 (explaining that an action arising under the Act becomes "a new federal cause of action" that "supplants the prior state cause of action"); *TMI II*, 940 F.2d at 854 (holding that after the Act's 1988 amendments, "no state cause of action based upon public liability exists").

**C.** In view of this statutory foundation, we are left to determine whether plaintiffs have asserted a public liability action (and, if so, their state law claims are removable and preempted). Answering that question requires us to "look beyond the labels" plaintiffs use in their complaint and instead examine "the substance of the allegations" to "determine the nature of the cause of action." *See Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 391 (6th Cir. 2020) (citations omitted).

Start, as we must, with the Act's text. The Act defines a "public liability action" as "any suit asserting public liability." 42 U.S.C. § 2014(hh). "Public liability," as noted, means "any legal liability arising out of or resulting from a nuclear incident." *Id.* § 2014(w). And "nuclear incident," in turn, means "any occurrence, including an extraordinary nuclear occurrence" causing "bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." *Id.* § 2014(q).

Plaintiffs' allegations fit comfortably within this definitional chain.  To begin, plaintiffs (despite their contentions otherwise) have alleged a "nuclear incident."  Their complaint alleges that the plant expelled "radioactive materials," including uranium, neptunium, and plutonium, as well as "other metals into the air, water, and soil" of the surrounding community.  These are the types of substances that, when they harm persons or property, can give rise to a "nuclear incident."  *See* 42 U.S.C. § 2014(e) (defining "byproduct material" as "any radioactive material (except special nuclear material) yielded in or made radioactive by exposure to the radiation incident to the process of producing or utilizing special nuclear material"); *id.* § 2014(z) (defining "source material" to include uranium); *id.* § 2014(aa) (defining "special nuclear material" to include plutonium and certain uranium isotopes).  Plaintiffs also allege that their exposure to these substances caused them to suffer "illnesses," "cancers," and other injuries that are included as the types of physical harms encompassed by a "nuclear incident."

Those injuries, moreover, according to plaintiffs' allegations, resulted from an "occurrence," as that term is used in the Act's definition of a "nuclear incident."  *See* 42 U.S.C. § 2014(q) ("The term 'nuclear incident' means any occurrence . . . .").  In the absence of a statutory definition of "occurrence," we give the term its ordinary meaning.  *See United States v. Grant*, 979 F.3d 1141, 1144 (6th Cir. 2020); *see also Estate of Ware v. Hosp. of the Univ. of Pa.*, 871 F.3d 273, 281 (3d Cir. 2017) (applying the "ordinary meaning" of "occurrence").  At the time of the Act's passage, "occurrence" meant "something that occurs, happens, or takes place," *see Occurrence*, Oxford English Dictionary (2d ed. 1989); *see also Occurrence*, Oxford English Dictionary Online (last accessed Sept. 8, 2021) (same), or "something that takes place; *esp.*: something that happens unexpectedly and without design," *see Occurrence*, Webster's Third New International Dictionary (1986); *see also Occurrence*, Merriam-Webster Unabridged Dictionary Online (last accessed Sept. 8, 2021) (same).  With occurrence defined in such broad fashion, one can fairly conclude that plaintiffs' alleged radiation-related injuries stemmed from an "occurrence."  Plaintiffs thus allege facts that constitute a "nuclear incident."  *See* 42 U.S.C. § 2014(q).  And because plaintiffs assert claims based upon that incident, they are asserting claims for "public liability."  *See id.* § 2014(w).  Taking all of this together, plaintiffs' state law claims amount to a "public liability action," meaning their claims are preempted by the Act.

This conclusion comports with *Nieman*. Nieman claimed that the discharge of uranium from a nearby nuclear facility damaged his property. *Nieman*, 108 F.3d at 1547. In addition to asserting claims under the Price-Anderson Act, Nieman brought several state law claims. *Id.* He argued that the defendants, through release of uranium into the air and water, "created a trespass" on his property "that continues to this day and will continue into the foreseeable future." *Id.* We held that his "state law claims [could not] stand as separate causes of action." *Id.* at 1553. So too here. Plaintiffs allege several state law claims, including trespass. And as explained, those claims stem from a "nuclear incident," and thus constitute a "public liability action." As a result, the Act, as the district court correctly held, preempts plaintiffs' claims. *Id*.

**D.** Plaintiffs resist this conclusion in several respects. First, they contend that this case should not be in federal court to begin with and should be remanded to state court. But as explained, the Act expressly authorizes the removal of claims asserting public liability "arising out of or resulting from a nuclear incident." 42 U.S.C. § 2210(n)(2). Because plaintiffs' allegations fit that bill, defendants could remove the complaint to federal court. The district court thus did not err in denying plaintiffs' motion for remand.

Second, citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984), and *English v. Gen. Elec. Co.*, 496 U.S. 72 (1990), plaintiffs contend that the Act "does not preempt all state law claims" regarding "activity conducted by a nuclear facility operator." *Silkwood* held that the Atomic Energy Act "occupied the entire field of nuclear safety concerns," 464 U.S. at 249 (quoting *Pac. Gas & Elec. Co.*, 461 U.S. at 212), but that Congress nonetheless "assumed that state-law remedies . . . were available to those injured by nuclear incidents," *id.* at 256. From that latter observation, the Supreme Court went on to hold that the Atomic Energy Act did not preempt a state-authorized award of punitive damages arising from the expulsion of plutonium from a nuclear facility. *Id.* at 258. *English*, meanwhile, held that the Energy Reorganization Act did not preempt a state law claim for intentional infliction of emotional distress brought by a nuclear-fuels production facility employee who alleged she was retaliated against for complaining about facility safety issues. 496 U.S. at 85 (explaining that "not every state law that in some remote way may affect the nuclear safety decisions made by those who build and run nuclear facilities can be said to fall within the pre-empted field").

Plaintiffs may be correct that the Price-Anderson Act does not preempt all state law claims regarding activity at a nuclear facility. But their claims are more specific than that—they arise from alleged events that amount to a *nuclear incident*, as that term is defined by the Act. And state law claims of that nature are preempted by the Act. *See Nieman*, 108 F.3d at 1553. Neither of plaintiffs' cases undermines our conclusion. *Silkwood*, for one, was decided before Congress amended the Act in 1988 to extend the Act's scope to cover "public liability actions" like this one. *See* 42 U.S.C. § 2210(n)(2); *TMI II*, 940 F.2d at 853–54. And *English*, for its part, does not concern the Act, let alone a nuclear incident; it addressed whether the Energy Reorganization Act preempted an emotional distress claim.

Third, plaintiffs attempt to distinguish *Nieman*. They characterize *Nieman* as involving a facility with a single leak on a single day, whereas this case, they say, involves a facility that has been "leaking toxic materials into the environment for decades." And claims based upon "ongoing releases," plaintiffs contend, are not subject to Price-Anderson preemption. According to plaintiffs, only injuries stemming from a singular "nuclear incident," not those arising from multiple events, fit the statutory prerequisites.

We are not convinced. As an initial matter, it is debatable whether *Nieman* involved a singular event in that Nieman alleged a "continuing trespass" ten years after the leak, one that had "damaged and continued to damage his property." *Nieman*, 108 F.3d at 1547–48. But more to the point, the Act's text does not limit the term "nuclear incident" to a single event. As explained above, the term "nuclear incident"—and the use of "any occurrence" in its definition—can fairly encompass multiple releases of radioactive material over time. A settled rule of statutory construction, moreover, instructs that "unless the context" of the Price-Anderson Act "indicates otherwise[,] words importing the singular include and apply to several persons, parties, or things." *See* 1 U.S.C. § 1 (Dictionary Act). As we see no context suggesting otherwise, "ongoing releases" can constitute an "occurrence" within the meaning of "nuclear incident" under the Act.

We are not alone in that conclusion. Several of our sister circuits have held that the Act applies to claims of injury resulting from periodic releases of toxic materials. *See Estate of Ware*, 871 F.3d at 277, 281 (claim of a cancer researcher who allegedly developed a fatal tumor

after exposure to radiation in his lab over 16 years); *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 337–40 (5th Cir. 2000) (claims of more than one thousand plaintiffs who either worked in uranium mines or processing plants and were exposed to radiation or uranium dust, or were exposed through contact with those workers or through environmental factors like wind and groundwater); *Roberts*, 146 F.3d at 1307–08 (claim of a nuclear plant worker who was allegedly exposed to radiation from 1966 to 1989). All things considered, we see no merit to the argument that claims regarding ongoing releases are exempted from the Act's preemptive scope.

Fourth, and in tandem with their argument that *Nieman* is not controlling here, plaintiffs urge us to follow the lead of then-Judge Gorsuch in his decision for the Tenth Circuit in *Cook II*. Setting aside the fact that *Nieman* is analogous and thus controlling, *Cook II* is distinguishable. The 25-year *Cook II* odyssey began when individuals brought claims under both the Act and state law against a nuclear weapons production facility. The plaintiffs secured a favorable jury verdict on both their federal and state claims in district court. But the Tenth Circuit reversed and vacated the judgment, finding error in the jury instructions regarding what constitutes a "nuclear incident" and remanding the case for further proceedings. *See Cook v. Rockwell Int'l Corp. (Cook I)*, 618 F.3d 1127, 1132–33 (10th Cir. 2010). Critical to that resolution was the appellate court's holding that the jury instruction on the elements for proving a "nuclear incident" under the Act was flawed. *See id.* at 1140; *Cook II*, 790 F.3d at 1090–91. On remand to the district court, the plaintiffs abandoned their Price-Anderson claim, conceded that their claims did not involve a "nuclear incident," and argued instead that defendants were liable under traditional tort law for their state law claims. When the case returned to the Tenth Circuit, the defendants asserted that the plaintiffs' state law claims were preempted by the Act. *Cook II*, 790 F.3d at 1092. According to the defendants, because the plaintiffs initially centered their claims on the existence of a "nuclear incident" and then abandoned their claims under the Act, their state law claims, which relied on the same sequence of events, were preempted because they involved an (alleged but unproven) "nuclear incident." *Id.* at 1091–92. The Tenth Circuit disagreed. As that court viewed things, when "a nuclear incident is alleged but unproven[,] . . . nothing in [the Act] dictates that injured parties in such circumstances are forbidden from seeking or securing traditional state law remedies." *Id.* at 1095. Rather, "Congress anticipated the possibility of

lesser nuclear 'occurrences' that fail to rise to the level of nuclear 'incidents.'" *Id.* As a result, the plaintiffs' state law claims were not preempted. *Id.* at 1099.

*Cook II* is a unique (and inapposite) case. There, the plaintiffs accepted after *Cook I* that they could not prove a "nuclear incident" under the Act, a concession the defendants did not dispute. *See Cook II*, 790 F.3d at 1091 & n.1 (noting that the defendants "surely would be judicially estopped" in the second appeal from arguing that the plaintiffs' claims arose from a nuclear incident after previously arguing that the plaintiffs could not prove a nuclear incident had occurred). But here, defendants argue that plaintiffs' claims do stem from a nuclear incident, meaning they are preempted. *See Nieman*, 108 F.3d at 1553. In other words, unlike in *Cook II*, where the Act's preemptive scope over a "nuclear incident" was a "beside-the-point point," here it is the entire point. *See Cook II*, 790 F.3d at 1098 (noting that "no one dispute[d]" that the Act was "the exclusive means of compensating victims for any and all claims arising out of nuclear incidents" (quoting *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008) (as amended))); *see also Dailey v. Bridgeton Landfill, LLC*, 299 F. Supp. 3d 1090, 1097–98 (E.D. Mo. 2017) (distinguishing *Cook II* and holding that the Act "preempts state-law claims when a nuclear incident is alleged").

Fifth, plaintiffs argue that their claims do not arise from a "nuclear incident" because there has been no public notification of such an incident. As plaintiffs emphasize here, the Act defines "nuclear incident" with reference to an "occurrence," yet the Act does not define "occurrence." *See* 42 U.S.C. § 2014(q). As a result, plaintiffs believe that the meaning of "occurrence" should be informed by the Act's definition of "extraordinary nuclear occurrence," which is defined as:

> any event causing a discharge or dispersal of source, special nuclear, or byproduct material from its intended place of confinement in amounts offsite, or causing radiation levels offsite, which the Nuclear Regulatory Commission or Secretary of Energy . . . determines to be substantial, and which the [Commission or Secretary] . . . determines has resulted in or probably will result in substantial damages to persons offsite or property offsite.

42 U.S.C. § 2014(j). Plaintiffs contend that the Commission is obligated to publish notice in the Federal Register of their determination that an extraordinary nuclear occurrence has taken place.

*See* 10 C.F.R. § 140.82(a). It follows, says plaintiffs, that because an "extraordinary nuclear occurrence" requires publication, a "nuclear incident" (that is, "any occurrence" causing certain harms related to radioactive material) necessarily requires publication too, which no party suggests has occurred.

This argument also lacks merit. Under the Act, the term "nuclear incident" is broader than and distinct from the term "extraordinary nuclear occurrence." *See* 42 U.S.C. § 2014(q) (defining "nuclear incident" in part as "any occurrence, *including* extraordinary nuclear occurrence" (emphasis added)); *see also Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008) (explaining that the word "include" typically is a term of enlargement). As a result, the regulatory requirements for a specific type of nuclear incident—an extraordinary nuclear occurrence—do not necessarily apply to all nuclear incidents in general. The Act, moreover, defines the phrase "extraordinary nuclear occurrence" separately from the phrase "any occurrence" in the definition of "nuclear incident," *see* 42 U.S.C. § 2014(j), a manner of draftsmanship that suggests distinct meanings for the two uses of the word, *see Russello v. United States*, 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each."). And even if plaintiffs are correct that we should look to regulations related to extraordinary nuclear occurrences in this context, 10 C.F.R. § 140.82(a) seemingly does not require the Commission to publish notice of an extraordinary nuclear occurrence. Rather, it directs the Commission to publish notice in the Federal Register of the date and place of an alleged nuclear event only if the Commission "does not have . . . enough information available to make a determination that there has been an extraordinary nuclear occurrence." *Id.*

Sixth, plaintiffs point to a separate federal case alleging that defendants intentionally released radioactive materials into the community. Seizing on those allegations, plaintiffs assert that the Act does not apply to purposeful releases of radioactive materials. Plaintiffs, however, failed to make this same argument at any point in the district court, including in their complaint. As a result, the allegation is not properly before us. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("Plaintiffs cannot . . . ask the court to consider new allegations (or evidence) not contained in the complaint."); *600 Marshall Ent. Concepts, LLC v.*

*City of Memphis*, 705 F.3d 576, 585 (6th Cir. 2013) ("[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal." (citation omitted)).

Seventh, plaintiffs object to the fact that, had they filed a claim under the Act and prevailed, defendants would be indemnified by the federal government. To plaintiffs' minds, that outcome would be an unsound use of the federal treasury while, at the same time, would in essence let defendants off the hook for their alleged actions. Right or wrong, these policy arguments are better directed to Congress. As reflected in the Act's long statutory history, the legislative branch decided to utilize indemnification in the event of liability associated with a nuclear incident. The judicial branch must enforce a constitutionally enacted law "as it is written—even if we think some other approach might accord with good policy." *Burrage v. United States*, 571 U.S. 204, 218 (2014) (cleaned up). We thus decline to rewrite the statute to favor plaintiffs' preferred public policy.

Lastly, plaintiffs argue that Price-Anderson Act preemption violates the Fifth Amendment's Takings and Due Process Clauses. *See* U.S. CONST. amend. V. Construing the Act to preempt "all state law causes of action" and requiring plaintiffs to bring Price-Anderson claims when "'nuclear incidents' have not occurred," plaintiffs contend, "will leave injured persons without redress." And that result, says plaintiffs, unconstitutionally "eliminate[s] common law state rights without providing any substitute remedy."

Plaintiffs' argument is unpersuasive. Setting aside the fact that their primary authority is a concurring opinion, *see PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 93–94 (1980) (Marshall, J., concurring) (suggesting "constitutional questions might be raised if a legislature attempted to abolish certain categories of common-law rights" without providing a "reasonable alternative remedy"), we have previously held that the Act is an adequate alternative remedy to the claims it displaces, *see Rainer v. Union Carbide Corp.*, 402 F.3d 608, 611, 624 (6th Cir. 2005). We reached that conclusion with a nod to "judicial restraint," an important consideration where "Congress has provided what it considers adequate remedial mechanisms." *Id.* at 623 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)). As to that latter point in particular, the Act enables a plaintiff to recover for alleged injuries from nuclear incidents by filing a public liability action under the Act. *See* 42 U.S.C. § 2014(hh). True, *Rainer* considered Price-

Anderson preemption in the setting of a *Bivens* claim, where federal constitutional claims were asserted against federal officers. But the analysis there arguably carries even more force when, as here, state law claims are displaced. For unlike *Bivens* claims, which are wholly displaced by the Act, Congress did not entirely eliminate application of state common law; state law still provides the substantive rules of decision for Price-Anderson claims (to the extent it does not conflict with federal law). 42 U.S.C. § 2014(hh); *Nieman*, 108 F.3d at 1553; *Day v. NLO, Inc.*, 3 F.3d 153, 154 n.1 (6th Cir. 1993) (explaining that the Act "was not intended to alter the state law nature of the underlying tort claims"). In short, we see no constitutional defect with the Price-Anderson scheme.

\*   \*   \*   \*   \*

Upon concluding that plaintiffs' state law claims were preempted, the district court dismissed the action for failure to state a claim. In other cases involving similar claims, the plaintiffs have often brought a claim (or claims) under the Price-Anderson Act, either solely or in addition to other federal and state law claims. *See, e.g.*, *Nieman*, 108 F.3d at 1547; *McGlone v. Centrus Energy Corp.*, No. 2:19-cv-02196, 2020 WL 4431482, at \*1 (S.D. Ohio July 31, 2020); *Smith v. Carbide & Chems. Corp.*, No. 5:97-CV-3-M, 2009 WL 3007127, at \*1 (W.D. Ky. Sept. 16, 2009). Here, however, plaintiffs have disclaimed reliance on the Act. In their complaint, they asserted that their "claims do not fall within the scope of the Price-Anderson Act." Before the district court, they argued that their claims did "not factually meet the prerequisites of the [Act]." And on appeal, they have maintained that they "chose to pursue state law claims" and "have not made a claim under the [Act]." Because claims asserting liability arising from a nuclear incident can be brought under the Act "or not at all," *Nieman*, 108 F.3d at 1553, the district court properly dismissed plaintiffs' complaint for failure to state a cognizable claim.

**CONCLUSION**

For the foregoing reasons, we affirm the district court's grant of defendants' motion to dismiss and the court's dismissal of plaintiffs' motion to remand as moot.